The STATE of Ohio [City of Akron], Appellee,

v.

BILDER, Appellant.

[Cite as *State v. Bilder* (1994), 99 Ohio App.3d 653.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 16754

Decided Dec. 30, 1994.

654

*Max Rothal,* Law Director, and *Tracy Simms,* Assistant Law Director, for appellee.

*Edward A. Dark,* for appellant.

*Per Curiam.*

Defendant Rudolph Bilder has appealed from his conviction of menacing by stalking. He argues (1) that the trial court received improper other acts evidence; (2) that the trial court incorrectly failed to instruct the jury regarding the definition of the phrase "closely related in time" as used in the ordinance pursuant to which he was prosecuted; (3) that the trial court incorrectly permitted references to his involvement in prior criminal activity; (4) that the ordinance pursuant to which he was prosecuted is unconstitutional; and (5) that the state failed to present sufficient evidence that he caused his alleged victim to suffer mental distress to support the judgment against him. This court affirms defendant's conviction because (1) the trial court did not err by receiving evidence of other acts in which defendant had engaged; (2) the phrase "closely related in time" did not need to be defined for the jury; (3) most of the claimed references

to defendant's involvement in prior criminal activity were, at best, obscure, and the trial court sustained defendant's objection to the only reference that could have come close to improperly influencing the jury; (4) Akron City Code 135.09 is not unconstitutional as applied in this case; and (5) there was sufficient evidence before the jury to support its conclusion that defendant's victim suffered mental distress.

## I

Defendant was accused of menacing Ronald Smith, a Summit County probation officer, in violation of Akron City Code 135.09:

"[Defendant] at the City of Akron, Summit County, Ohio on the 22ND day of DECEMBER, 1993 DID, knowingly engage in a pattern of conduct which caused * * * RONALD SMITH to believe that [defendant] would cause physical harm to, or caused mental distress to the said RONALD SMITH * * *."

He was tried before a jury in the Akron Municipal Court commencing March 17, 1994.

The city presented evidence that defendant had harassed Smith several times between October 1992 and December 1993. The incidents allegedly occurred at or around the Summit County Courthouse, Smith's place of employment. Generally, defendant would call Smith derogatory names and make obscene gestures at him. Smith testified, however, that defendant's verbal harassment escalated into a physical confrontation on December 22, 1993:

"I was exiting the Courthouse and [defendant] was standing right inside of the entrance door. It's a very small confined space. If you're exiting and entering at the same time, you almost brush shoulders. * * * This is probably only the second time I had a real, real close encounter with [defendant]. Almost a face-to-face type of thing.

"I get right to the exit door. [Defendant] says, 'Hey, Shitty Smitty. That is your name, isn't it? Shitty?' I turned to [him] and I said, 'Rudy, I don't want to have any conversation with you. You keep bothering me, I'm going to press charges against you.'

"At that instant, I'm standing there and he strikes out at me and says, 'Fuck you, Shitty.' I go back and he strikes me in the chest. I have a file. I'm right-handed. I have a file in my right hand. I'm partly against the door.

"When I go back I instantly swing grazing him on the chin. [Defendant] goes back against the counter. He says, 'Is that all you got? You missed me, Shitty. Let's go outside.'"

Smith testified that he left the courthouse after the confrontation and that defendant followed him while he walked toward his car.

Smith also testified that defendant confronted him at the probation office in the courthouse six days later:

"I was walking within the Probation Department. Walking up to the front desk, which we often do to check our mail box and stuff. [Defendant] is standing there. I just looked over. He's standing in the doorway. He says, 'How's your hand, shitty?' I said, 'Rudy, I don't wish to have any conversation with you.' His response is, 'Conversation, hell. You don't know what a conversation is, asshole.' By that time the secretary got out of her chair and walked around the counter and escorted him out of the Probation Department. Then I came out and made a police report."

The jury found defendant guilty, and the trial court sentenced him to ninety days in jail, sixty days of which it suspended on the condition that he have no further contact with Smith. He timely appealed to this court.

## II

### A

Defendant's first assignment of error is that the trial court received improper other acts evidence. Specifically, he has asserted that he was "denied a fair trial in that testimony of events over a period of many months was presented for the jury's consideration, yet the offense was alleged to have occurred in December, 1993."

Akron City Code 135.09(A) provides:

"No person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."

Section 135.09(C)(1) defines a "pattern of conduct" as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents."

There was evidence before the jury from which it could find that defendant engaged in actions aimed at causing Smith mental distress on December 22, 1993 and December 28, 1993. The evidence of those two incidents supplied the elements of the crime defendant was accused of committing. There was also evidence before the jury, however, regarding a number of other confrontations between defendant and Smith during the period between October 1992 and December 1993. Defendant's assignment of error is addressed to that evidence of other acts.

Evid.R. 404(B) provides for admission of other acts evidence for a number of purposes, including showing motive or intent, while excluding such evidence when it is offered for the purpose of proving a person's character "in order to show that he acted in conformity therewith." Other acts evidence can be particularly useful in prosecutions for menacing by stalking because it can assist the jury in understanding that a defendant's otherwise innocent appearing acts, when put into the context of previous contacts he has had with the victim, may be knowing attempts to cause mental distress. For example, in *State v. Woodgeard* (Apr. 29, 1994), Fairfield App. No. 45–CA–SEP–1993, unreported, 1994 WL 167928, the Fifth District Court of Appeals affirmed a judgment of a trial court in a menacing-by-stalking case in which the pattern of conduct for which defendant was prosecuted was twice driving by his victim's home and driving in her neighborhood a third time. The court of appeals held that the trial court did not err by receiving evidence that the defendant had previously assaulted the victim, had followed her, and had placed numerous harassing telephone calls to her. These past contacts between the defendant and his victim supplied the context from which it became clear that what otherwise appeared to be an innocent act, driving in the victim's neighborhood, was actually knowingly causing the victim mental distress.

Despite the words used by defendant in his assignment of error, that he "was denied a fair trial in that testimony of events over a period of many months was presented for the jury's consideration, * * * *" his argument in support of that assignment does not appear to be that such other acts evidence was not admissible. Rather, he appears to have argued that the jury may have been misled into convicting him based on the incidents that occurred prior to December 1993 instead of doing so based only on the two incidents that occurred during that month.

▇▇▇▇ Defendant has claimed that he requested the trial court to provide the jury a limiting instruction regarding its consideration of the other acts evidence that was before it. He concedes, however, that no such request appears in the record. As the appellant, defendant is required to provide this court with a transcript of the proceedings that occurred in the trial court that is adequate for a determination of his assigned error. *Bank One, N.A. v. Hill* (Feb. 9, 1994), Wayne App. No. 2796, unreported, 1994 WL 45731, at 5. Accordingly, this court must view defendant's argument as one that was not brought to the attention of the trial court. In the absence of plain error, an appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph one of the

syllabus, vacated in part on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3137, 57 L.Ed.2d 1156. The trial court did not commit plain error in not providing the limiting instruction defendant has asserted should have been provided. The trial court properly instructed the jury that, before it could find defendant guilty, it had to find, beyond a reasonable doubt, that he had engaged in a pattern of conduct "on or about December of 1993" that knowingly caused Smith to believe that he would cause him physical harm or caused him mental distress. The absence of the limiting instruction that defendant has argued should have been provided does not present the type of exceptional circumstances that would cause this court to conclude that defendant's conviction was a manifest miscarriage of justice. See *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus. Accordingly, defendant's first assignment of error is overruled.

### B

Defendant's second assignment of error is that the trial court incorrectly failed to instruct the jury regarding the meaning of the phrase "closely related in time" as used in Section 135.09(C)(1). Defendant argues that, without an instruction defining that phrase, the jury was free to apply a subjective standard to his alleged conduct. Such a subjective standard, according to defendant, would inevitably lead to inconsistent verdicts in similar cases.

■ The trial court did not err by not instructing the jury regarding the meaning of the phrase "closely related in time." For one thing, defendant did not provide the trial court a suggested definition for inclusion in its instructions. In addition, this court has previously determined that "terms of common usage * * * do not require elaboration to the jury." *Akron v. Wendell* (1990), 70 Ohio App.3d 35, 42–43, 590 N.E.2d 380, 385, citing *State v. Riggins* (1986), 35 Ohio App.3d 1, 8, 519 N.E.2d 397, 405–406. As has been noted by the Ohio Supreme Court, the inclusion of definitions in jury instructions should be limited:

"We emphatically remind trial courts that they should limit definitions where possible, to those definitions provided by the legislature in order to avoid unnecessary confusion and needless appellate challenges." *State v. Williams* (1988), 38 Ohio St.3d 346, 356, 528 N.E.2d 910, 922, fn. 14, certiorari denied (1989), 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238.

Neither Section 135.09 nor any other relevant provision includes a definition of the phrase "closely related in time" because it is a phrase of common usage. The trial court did not err by failing to include a definition of it in the instructions provided to the jury.

Defendant also argues that Section 135.09 is unconstitutionally vague because of its use of the phrase "closely related in time." He has conceded, however, that he failed to raise this issue before the trial court. As noted previously, in the absence of plain error, an appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph one of the syllabus, vacated in part on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3137, 57 L.Ed.2d 1156. Accordingly, this court declines to consider defendant's argument that Section 135.09 is unconstitutionally vague. Defendant's second assignment of error is overruled.

C

■ Defendant's third assignment of error is that the trial court incorrectly permitted references to his involvement in prior criminal activity. He has asserted that there were four such improper references, all during Smith's testimony. Three of those claimed references, if references to criminal activity at all, were so obscure that they could not possibly have prejudiced defendant. The trial court sustained an objection to the fourth claimed reference and ordered it stricken, although it would not have been an error to have allowed it to stand.

The first claimed reference was as follows:

"Q: How long have you known [defendant]? When did you come to know him?

"A: I first became personally acquainted with him when I was working—I believe the year was around 1984 or '85. I was working—

"[Defendant's attorney]: Objection, Your Honor. I believe the question has been answered.

"[The Court]: Sustained.

"Q: You (inaudible).

"A: In 1984 or 1985.

"Q: That was an Akron Police Officer; is that correct?

"A: Correct."

The fact that Smith became acquainted with defendant during the time he was working as a police officer does not necessarily mean that defendant was engaged in criminal activity. Besides, defendant failed to object to this claimed reference to his criminal activity.

The second claimed reference to defendant's prior criminal activity was as follows:

"Q: Did you ever have any altercations with [Defendant] as a Police Officer?

"A: Yes, I have."

Again, altercations are not necessarily criminal activity. In addition, the fact that defendant and Smith had "altercations" during the time Smith was a police officer, a position from which he had retired during 1988, provided part of the context within which the jury needed to consider the two incidents that occurred during December 1993 in order to determine whether defendant was knowingly causing Smith mental distress. Further, again, defendant failed to object to this claimed reference to his prior criminal activity.

The third claimed reference to defendant's prior criminal activity occurred during defendant's cross-examination of Smith:

"Q: Have you ever encountered [defendant] anywhere other than at the Courthouse or in the immediate area?

"A: What's your definition of the immediate area?

"Q: Within 2 or 3 blocks.

"A: Yes.

"Q: When would that have been?

"A: 1986, 1987 and 1988."

Again, just because Smith encountered defendant during the time he was a police officer does not mean defendant was engaged in criminal activity. Besides, defendant elicited this testimony and cannot now complain about it.

■ The fourth claimed reference was as follows:

"Q: Tell us about the first incident [after becoming a probation officer].

"A: First incident I believe was with Doug Elliot where we were exiting the Courthouse. [Defendant] approached me [and called me names]. * * * Mr. Elliot said, 'Who is this guy? Where did he come from?' Then I explained to Mr. Elliot that he seeks me out wherever I am and cusses me out because of a case where I testified with him in a criminal case—

"[Defendant's attorney]: Objection, Your Honor. Move to strike.

"The Court: Sustained. It is so stricken. The Jury will disregard the last portion of the statement."

Because of Smith's use of the word "with" instead of "against," it is not clear that he was referring to a case in which defendant was the accused. Further, Smith's statement was stricken, and the jury was instructed to disregard it.

Even if the reference had been a clear statement that Smith had testified against defendant in a criminal proceeding and the trial court had allowed it to stand, it would not have constituted reversible error. Such evidence would properly provide part of the context within which defendant's December 1993 conduct caused Smith to suffer mental distress. Defendant's third assignment of error is overruled.

### D

Defendant's fourth assignment of error is that Section 135.09, as applied in this case, is unconstitutional because it infringes upon his freedom of speech. Additionally, he has complained that his actions did not meet the "pattern of conduct" requirement of the statute.

Defendant has, in essence, argued that Section 135.09 is unconstitutionally overbroad. He has asserted that the ordinance, as applied in this case, violates Section 11, Article I of the Ohio Constitution because it prohibits the exchange of constitutionally protected speech. He has maintained that nearly all of his actions "involved only verbal name calling without any threats and without any physical action/contact," and were merely an exchange of words "between two individuals passing in the hall." Accordingly, he has contended that the statute is overbroad because it punishes the exercise of his constitutional rights.

"[T]he free speech guarantees accorded by the Ohio Constitution are no broader than the First Amendment * * * " to the United States Constitution. *Eastwood Mall, Inc. v. Slanco* (1994), 68 Ohio St.3d 221, 222, 626 N.E.2d 59, 61. Accordingly, cases interpreting the First Amendment provide the relevant analysis for interpretation of Section 11, Article I of the Ohio Constitution. *Id.*, citing *State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals* (1992), 63 Ohio St.3d 354, 362–363, 588 N.E.2d 116, 123; *Zacchini v. Scripps–Howard Broadcasting Co.* (1978), 54 Ohio St.2d 286, 288, 8 O.O.3d 265, 266, 376 N.E.2d 582, 583–584.

■■ A statute is overbroad if it " 'sweeps within its prohibitions what may not be punished under the First and Fourteenth Amendments.' " *Akron v. Rowland* (1993), 67 Ohio St.3d 374, 387, 618 N.E.2d 138, 148, quoting *Grayned v. Rockford* (1972), 408 U.S. 104, 115, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222, 231. Thus, a " 'clear and precise enactment may * * * be "overbroad" if in its reach it prohibits constitutionally protected conduct.' " *Id.*, quoting *Grayned*, 408 U.S. at 114, 92 S.Ct. at 2302, 33 L.Ed.2d at 231. This principle is based upon a recognition that the "First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society."

(Citations omitted.) *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 611–612, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830, 839–840.

The United States Supreme Court has indicated that it will sometimes strike an overbroad statute even if the activities of those challenging the statute are unprotected forms of speech:

"[A] decree may be invalid if it prohibits privileged exercises of First Amendment rights whether or not the record discloses that the [defendant] has engaged in privileged conduct. For in appraising a statute's inhibitory effect upon such rights, this Court has not hesitated to take into account possible applications of the statute in other factual contexts besides that at bar." (Citations omitted.) *Natl. Assn. for the Advancement of Colored People v. Button* (1963), 371 U.S. 415, 432, 83 S.Ct. 328, 337–338, 9 L.Ed.2d 405, 418.

Consequently, it has allowed " 'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.' " *Broadrick,* 413 U.S. at 612, 93 S.Ct. at 2916, 37 L.Ed.2d at 840, quoting *Dombrowski v. Pfister* (1965), 380 U.S. 479, 486, 85 S.Ct. 1116, 1120, 14 L.Ed.2d 22, 28.

This court, however, does not need to consider whether Section 135.09 is facially overbroad. Despite the United States Supreme Court's broad statements concerning the application of the overbreadth doctrine, it has pursued a more limited analysis when considering challenged laws that regulate conduct that "falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct." *Broadrick,* 413 U.S. at 615, 93 S.Ct. at 2917, 37 L.Ed.2d at 842. The Supreme Court has noted that there are times when criminal statutes that infringe upon some protected speech should not be held to be facially overbroad:

"Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe." *Id.* at 615, 93 S.Ct. at 2917–2918, 37 L.Ed.2d at 842.

Section 135.09 is a criminal law aimed at prohibiting harmful conduct. The statute undoubtedly reflects a legitimate state interest.

This court must determine, however, whether Section 135.09 is unconstitutional as applied in this case. To accomplish this task, it must determine whether defendant had a constitutionally protected right to engage in the type of activity

he allegedly committed. If defendant did not have a constitutionally protected right to engage in those activities, then his argument that the statute, as applied in this case, was unconstitutionally overbroad must fail. Under the facts in this case, defendant did not have a constitutionally protected right to engage in the conduct that caused Smith mental distress.

The First Amendment generally prevents government from proscribing speech or expressive conduct because of disapproval of the ideas expressed. *R.A.V. v. St. Paul* (1992), —— U.S. ——, ——, 112 S.Ct. 2538, 2542–2543, 120 L.Ed.2d 305, 317. Not all types of speech, however, are protected by the United States and Ohio Constitutions. "There are well-defined and narrowly limited classes of speech, the prevention of which does not raise any constitutional problem, including lewd and obscene, profane and libelous speech, and insulting or fighting words which by their very utterance inflict injury or tend to incite an immediate breach of the peace." (Citations omitted.) *State v. Presley* (1992), 81 Ohio App.3d 721, 723–724, 612 N.E.2d 353, 354. The United States Supreme Court has noted that from 1791 to the present, "our society, like other free but civilized societies, has permitted restrictions upon the content of speech in a few limited areas, which are 'of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'" *R.A.V. v. St. Paul*, —— U.S. at ——, 112 S.Ct. at 2542–2543, 120 L.Ed.2d at 317, citing *Chaplinsky v. New Hampshire* (1942), 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031. At least one Ohio appellate court has determined that it is not "within the protection of the First Amendment's guarantee of free speech to knowingly cause another to believe one will cause physical harm or mental distress to him or her by engaging in two or more actions or incidents closely related in time." *State v. Benner* (1994), 96 Ohio App.3d 327, 329–330, 644 N.E.2d 1130, 1132.

Additionally, defendant's conduct exceeded mere speech "in its purest form." Evidence was presented at trial that, on occasion, defendant would approach Smith in a confrontational manner with his "fists clenched." Further, the incidents of verbal harassment culminated in a physical confrontation during which, according to Smith, he was struck in the chest by defendant.

In regard to defendant's assertion that he did not engage in a "pattern of conduct," there was evidence of two confrontations during December 1993. Those confrontations were "closely related in time" and, therefore, constituted a "pattern of conduct." Defendant's fourth assignment of error is overruled.

E

Defendant's fifth assignment of error is that the state failed to present sufficient evidence that he caused Smith to suffer mental distress to support the

judgment against him. Primarily, he has argued that the prosecution was required to present expert testimony.

Expert testimony is not required to establish the existence of mental distress for purposes of Akron City Code 135.09. Subsection (C)(2) of that section defines "mental distress" as "any mental illness or condition that involves some temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment." In an analogous situation, the Ohio Supreme Court has noted that expert testimony is not required to determine the existence of an emotional injury:

"[Expert] medical testimony can assist the judicial process in determining whether the emotional injury is indeed, serious * * *. However, lay witnesses who were acquainted with the plaintiff, may testify as to any marked changes in the emotional or habitual makeup that they discern in the plaintiff after the accident has occurred. The jurors themselves, can refer to their own experiences in order to determine whether, and to what extent, the defendant's conduct caused the serious emotional distress." (Citation omitted.) *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 80, 6 OBR 114, 121, 451 N.E.2d 759, 767.

Similarly, in this case, the jurors could have relied on their experiences and on the testimony presented by Smith to determine if, in fact, he suffered mental distress because of defendant's actions.

There was sufficient evidence presented for the jury to find beyond a reasonable doubt that Smith suffered mental distress. Smith testified that, although he did not go to a psychiatrist's office for treatment, he socialized with a psychiatrist on a regular basis and consulted him on several occasions concerning the incidents with defendant. Additionally, he stated that he was emotionally upset by defendant's conduct:

"Very frustrated. I'm angry. I guess you can say I'm at my wit's end. I don't—I'm ready to explode. I'm having stomach problems. Work problems. I can't concentrate. I feel like I'm a prisoner in my own workplace. I complain to my Supervisor. I complain to the· Court Executive Officer. I'm informing everybody of what's going on. I don't know where to turn. I don't know what else to do."

Further, Smith's supervisor testified that Smith was visibly shaken by the physical confrontation that occurred on December 22, 1993:

"Ron was visibly shaken. He was angry. I even noticed that during the course of the next several days that followed when he saw probationers, he was a little more terse with them than he normally was. I'm not saying this was a direct result; but it wasn't the same Ron Smith that generally handled problems.

"We discussed it and he did indicate that this incident did bother him. We were trying to basically try to put the incident behind and concentrate more on the work he was dealing with.

"Over the next several weeks, his attitude seemed to change and he was back to himself again."

Inasmuch as there was sufficient evidence before the jury that Smith suffered mental distress, defendant's fifth assignment of error is overruled.

## III

Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

BAIRD, P.J., COOK and DICKINSON, JJ., concur.