OPINION
Jimmy D. Skeens appeals from a judgment of the Dayton Municipal Court which found him guilty of menacing by stalking.
Mr. Skeens separated from Samantha Skeens, his wife of twelve years, on June 12, 1998. On September 3, 1998, he was charged with menacing by stalking in violation of R.C. 2903.211(A) on the ground that he had knowingly caused Mrs. Skeens to believe that he would cause her physical harm or had knowingly caused her mental distress. The case was tried on September 17, 1998, and the trial court found Mr. Skeens guilty. He was sentenced to one hundred eighty days in jail, with one hundred seventy three days suspended on the condition that he commit no further violations of this nature. He was also fined $1,000, with $900 suspended, and was placed on supervised probation for up to two years.
Mr. Skeens raises two assignments of error on appeal.
 I. THE WEIGHT OF THE EVIDENCE WAS INSUFFICIENT TO SHOW THAT: 1) MR. SKEENS ENGAGED IN A MENACING PATTERN OF CONDUCT, CLOSELY RELATED IN TIME; 2) THAT HIS CONDUCT CAUSED MRS. SKEENS TO BELIEVE THAT MR. SKEENS WOULD CAUSE HER PHYSICAL HARM; AND 3) THAT MR. SKEENS' CONDUCT CAUSED MRS. SKEENS MENTAL DISTRESS.
Mr. Skeens claims that the state failed to prove any of the elements of menacing by stalking. He contends that the actions which formed the pattern of conduct upon which the state based its charge were not "closely related in time" as required by R.C.2903.211(C)(1). He also claims that the evidence established that Mrs. Skeens had felt threatened by him during their marriage, but not during their separation, the latter being the period charged in the complaint. Further, Mr. Skeens asserts that there was no evidence that he had caused Mrs. Skeens mental distress.
The evidence presented at trial was as follows.
Mrs. Skeens testified that between June 12, 1998, the date that she had separated from Mr. Skeens, and September 2, 1998, Mr. Skeens had repeatedly driven by her workplace at a slow pace. She further testified that, on one occasion, as she had returned from lunch with a male co-worker, Mr. Skeens had "cussed [her] out" and called her a whore in front of her co-workers. Mrs. Skeens also stated that Mr. Skeens had repeatedly driven his car very slowly past her mother's home, where she had lived for a few months following the separation. He had accused her of having a boyfriend after seeing her in the pool with her brother on one of his drives by the house. After she had moved to her own place, Mrs. Skeens saw Mr. Skeens parked at a convenience store across the street from her home, although she had not told him where she lived, and had seen him drive "through the alley a couple of times." Mrs. Skeens had had a restraining order against Mr. Skeens during the period in which some of these events occurred. Mrs. Skeens also testified that she had received numerous unwanted phone calls from Mr. Skeens while living at her mother's home until her mother installed a "blocker" on the phone. Mrs. Skeens testified that Mr. Skeens had hit her in the past and had threatened to kill her if she left him for another man, and that his activities during the period in question had increased her fear of him. She also testified that Mr. Skeens gets violent when he drinks.
Mr. Skeens presented a different version of events. He claimed that he had been present at Mrs. Skeens' workplace on several occasions at her request. He also testified that he had driven by Mrs. Skeens' residences and workplace to "try to spot [his] children and to say hello and to tell them that I love them." Mr. Skeens stated that he had been unaware of Mrs. Skeens' restraining order; he had simply chosen to stay away except for driving by once in awhile "[b]ecause [he] didn't want to see something that would hurt [his] little heart." Mr. Skeens claimed that the only time he had hit his wife was in 1993 when he had had a nervous breakdown because of his brother's death.
Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. Statev. Lawson (Aug. 22, 1997), Montgomery App. No. 16288, unreported. When a conviction is challenged on appeal as against the manifest weight of the evidence, we must review the entire record, weigh the evidence and reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 387, citing State v. Martin (1983), 20 Ohio App.3d 172,175. Appellate courts should reverse a conviction as against the manifest weight of the evidence only in exceptional circumstances. Martin, 20 Ohio App.3d at 175.
In convicting Mr. Skeens, the trial court apparently found Mrs. Skeens' testimony to be entitled to greater weight than Mr. Skeens' testimony. In our view, the trial court did not clearly lose its way in crediting Mrs. Skeens' testimony and did not create a manifest miscarriage of justice requiring reversal.
Mr. Skeens' argument that Mrs. Skeens had not felt threatened by him during their separation was based on three isolated pieces of Mrs. Skeens' testimony. She testified at various points that Mr. Skeens became violent when he had been drinking, that she had not seen him drinking since the time of their separation, and that he had not threatened her since their separation. Based on this testimony, Mr. Skeens concludes that "Mrs. Skeens' testimony show[ed] that Jimmy Skeens' conduct did not cause her to fear for her safety" during the period in question, i.e., after the time of their separation. In our view, the record does not compel this conclusion. Mrs. Skeens' contact with Mr. Skeens after their separation had been quite limited, consisting primarily of his drive-by visits and phone calls. Although she had not seen him drinking between June and September 1998, Mrs. Skeens may nonetheless have believed that Mr. Skeens was still drinking during this period. In fact, Mr. Skeens admitted at trial that he had had a drinking problem during the marriage and that he had been drinking as recently as August 1998. Thus, Mrs. Skeens could have reasonably believed that Mr. Skeens might become violent as a result of his drinking during the period in question.
Furthermore, although both parties agree that Mr. Skeens did not expressly threaten Mrs. Skeens between June and September 1998, the existence of a threat is not an element of the offense. Based on Mr. Skeens' previous threats that he would kill Mrs. Skeens if she left him for another man, his confrontational behavior upon seeing her with other men, his numerous uninvited appearances at her home and work, and Mrs. Skeens' testimony that his behavior had made her increasingly afraid, the trial court could have reasonably concluded that Mrs. Skeens felt threatened with physical harm even though Mr. Skeens had not made such a threat explicitly.
Mr. Skeens' argument that the events in question were not closely related in time is premised on his testimony that he had hit Mrs. Skeens only once during their marriage, on an occasion six years before their separation when he was having a "nervous breakdown," and that he had never hit her again. He claims that the isolated incident six years ago that caused her to fear for her safety was not closely related in time to the events of June through September 1998. We note, however, that Mrs. Skeens' testimony did not indicate that Mr. Skeens' physical abuse had been an isolated incident, that it had occurred in the distant past, or that it had been connected with a "nervous breakdown." Although Mrs. Skeens was not specific in her testimony about when Mr. Skeens had hit and threatened her, her testimony did directly contradict Mr. Skeens' claim that there had been only one physical attack. More importantly, the conduct for which Mr. Skeens was charged began at the time of his separation from Mrs. Skeens. Although any violence that occurred prior to the separation might have contributed to Mrs. Skeens fear of Mr. Skeens, it clearly was not part of the "pattern of conduct" charged in the complaint and did not have to be "closely related in time" to the other events.
Mr. Skeens also argues that his conviction was against the manifest weight of the evidence because no evidence was presented that Mrs. Skeens had suffered mental distress because of his actions. Pursuant to R.C. 2903.211(A), menacing by stalking occurs when one's pattern of conduct knowingly causes another "to believe that the offender will cause physical harm to the other person or cause[s] mental distress to the other person." (Emphasis added.) Even assuming, arguendo, that Mr. Skeens had not knowingly caused Mrs. Skeens mental distress, he had nonetheless committed the offense because the trial court found that he had knowingly caused her to believe that she would be physically harmed.
The first assignment of error is overruled.
 II. THE ONLY EVIDENCE OFFERED TO ESTABLISH THAT MRS. SKEENS FEARED FOR HER SAFETY, AND THUS, ESTABLISH AN ELEMENT OF THE CRIME, WAS TESTIMONY REGARDING MR. SKEENS PRIOR BAD ACTS. THEREFORE, ALLOWING THE INADMISSIBLE PRIOR ACT TESTIMONY AFFECTED THE OUTCOME OF THE TRIAL, AND WAS THEREFORE REVERSIBLE PLAIN ERROR.
Mr. Skeens claims that the state should not have been allowed to introduce evidence that he had hit and threatened Mrs. Skeens in the past because such evidence is prohibited by Evid.R. 404(B).
Evid.R. 404(B) states:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
The rule's list of purposes for which evidence of other bad acts might be admissible is non-inclusive. Evid.R. 404, Staff Note. Because Evid.R. 404(B) codifies an exception to the common law, it must be strictly construed against admissibility. State v.Coleman (1989), 45 Ohio St.3d 298, 299.
 In cases cast against a history of domestic violence, evidence of prior abuse has been found to be admissible pursuant to Evid.R. 404(B) to explain the context in which subsequent events occurred and why the events were perceived as they were by the victim. See, e.g., State v. Collie (1996) 108 Ohio App.3d 580, 583-584; State v. Schwartz (1991), 77 Ohio App.3d 484, 487; State v. Johnson
(Ohio Mun. 1994), 73 Ohio Misc.2d 1, 3. In prosecutions for menacing by stalking, the victim's belief that the offender will cause physical harm is an element of the offense which is often intertwined with their past interactions. Prior acts of violence between the defendant and the victim are "relevant and highly probative in establishing the victim's belief of impending serious harm." Schwartz, 77 Ohio App.3d at 487, citing State v. Warren (Dec. 31, 1990), Stark App. No. CA-8258, unreported and State v. Clements (Feb. 15, 1989), Wayne App. No. CA-2407, unreported. Other acts evidence can be particularly useful in prosecutions for menacing by stalking because it can assist the trier of fact in understanding that acts by a defendant that might otherwise appear to be innocent, when put into the context of previous contacts he has had with the victim, may be knowing attempts to cause mental distress. State v. Bilder
(1994), 99 Ohio App.3d 653, 658; State v. Woodgeard
(Apr. 29, 1994), Fairfield App. No. 45-CA-1993, unreported.
Mrs. Skeens testified that Mr. Skeens had hit her in the past and had threatened to kill her if she left him. In this context, Mrs. Skeens testified that Mr. Skeens' actions in repeatedly driving by her workplace and verbally attacking her upon seeing her in a car with a male coworker had scared her. Mrs. Skeens also testified that she feared Mr. Skeens and that his repeated phone calls to her residence after she had said she did not want to talk with him, drives by her house, and loitering at the store across the street from her house had increased the level of her fear. The trial court could have reasonably concluded that Mr. Skeens' prior acts of violence and threats toward Mrs. Skeens were admissible because they were directly relevant to her belief that he intended to cause her physical harm. See Bilder,99 Ohio App. 3d at 658; State v. Kelly (1993)89 Ohio App.3d 320, 323; Johnson, 73 Ohio Misc.2d at 3. Thus, the trial court did not err in admitting this evidence.
The second assignment of error is overruled.
The judgment of the trial court will be affirmed.
GRADY, P.J. and BROGAN, J., concur.
Copies mailed to:
Kevin R. Barnes
Thomas Kollin
Hon. Bill C. Littlejohn