This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant-defendant John Scott appeals from the order of the Akron Municipal Court convicting him of criminal trespass and menacing by stalking. This Court affirms.
 I.
Peggy Sue Murphy was involved in a relationship with Scott over a two and a half year period, during which they were engaged to be married. However, late in June of 2001, Murphy terminated the relationship.
A series of harassing encounters and phone calls ensued from July 7-25, 2001, culminating in Scott's arrest by officers of the Mogadore Police Department.
Scott was charged with menacing by stalking, in violation of R.C.2903.211(A); and criminal trespass, in violation of R.C. 2911.21(A)(3). Scott pled not guilty and the matter proceeded to a bench trial. The trial court found Scott guilty as charged, and sentenced him accordingly.
Scott has timely appealed, asserting two assignments of error.
 II. ASSIGNMENT OF ERROR I "THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE THAT THE APPELLANT CAUSED PEGGY SUE MURPHY TO SUFFER MENTAL DISTRESS."
 ASSIGNMENT OF ERROR II "THE STATE DID NOT PRODUCE SUFFICIENT EVIDENCE THAT THE APPELLANT KNOWINGLY CAUSED THE VICTIM TO BELIEVE THAT HE WOULD CAUSE HER PHYSICAL HARM."
The foregoing assignments of error will be considered together as they raise similar issues of law and fact.
In his first and second assignment of error, Scott argues that there was insufficient evidence that Murphy suffered mental distress or believed that Scott would cause her physical harm. This Court disagrees.
The familiar standard for evaluating a sufficiency of the evidence claim is whether after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. State v. Eley
(1978), 56 Ohio St.2d 169.
Menacing by stalking is proscribed by R.C. 2903.211(A), which provides:
 "No person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."
Scott engaged in a persistent course of oppressive stalking. On December 29, 2000, Scott broke Murphy's door off the hinges as she and her daughter cowered, inside the home and then smacked Murphy after gaining entry. On July 7, 2001, Scott violently grabbed Murphy and threw her against the washer and dryer, an attack that left visible bruises upon her arm. On July 14, 2001, Murphy and her daughter fled her house at night out of fear after Scott called approximately one hundred forty times. Some calls began with "I love you," before ending in argument. On July 15, 2001, Murphy was at an Akron Aeros baseball game with her daughter, when Scott called her cell phone seventy three times. Around 5:30 p.m., Scott banged on the door while Murphy and her daughter hid. Around 9:30 p.m., Scott returned and demanded that Murphy let him in the house. On July 16, 2001, Scott approached Murphy in the parking lot where she worked. Scott apologized for causing Murphy to lose sleep, and offered a cup of coffee. Murphy dumped the coffee out and admonished Scott "Don't bring me anything, don't call me, don't come near me." On July 18, 2001, Scott banged on Murphy's door and refused to leave when Murphy initially screamed at him to do so. Later in the day, Scott drove around Mogadore looking for Murphy as she was getting her hair done. Scott called Murphy's cell phone that day eighty three times. On July 20, 2001, Scott was at Murphy's home, refusing to leave unless he could give her daughter the gift of a marker. On July 23, 2001, Scott called Murphy at work, then followed her to Chapel Hill when she was done with work. As Murphy left the mall she saw Scott sitting on a bench. Scott had parked his truck in front of Murphy's vehicle. Murphy told Scott "You're driving me nuts * * * I can't sleep at my house * * * I don't want you around." On July 24, 2001, Scott repeatedly called Murphy, telling her "We can work things out." Murphy told Scott "I hate you, please don't ever call me again, I don't want anything to do with you again." The last event occurred on July 25, 2001. Murphy changed her cell phone number, and took her home phone off the hook. The next morning, Scott was at Murphy's house again pounding on the door trying to gain entrance. At that point, Murphy called Mogadore police, and Scott was arrested.
Mental distress is a "temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment." R.C. 2903.211(D)(2). This Court has held that a trier of fact may make such a determination without the aid of expert testimony: "The jurors themselves, can refer to their own experiences in order to determine whether, and to what extent, the defendant's conduct caused the serious emotional distress." State v. Bilder (1994), 99 Ohio App.3d 653, 665. Murphy's mental distress is corroborated by the fact of her changed routine and pattern of doing things, leaving her home out of fear on occasion and changing the telephone number of her cell phone. See Akronv. Andrews (Jan. 26, 2000), 9th Dist. No. 19383 (Victim lived in constant fear of defendant and testified that "he had changed his normal routines as a result of Defendant's actions. He had security lights installed around his home, cancelled a vacation so that his daughter would not be in the house alone, attempted to alter his working schedule, and asked his neighbors to keep an eye on his house.").
 III.
On the facts in this particular case, this Court concludes that the trial court had sufficient evidence upon which to conclude that Scott caused Murphy to suffer mental distress, and that Scott caused Murphy to believe that his oppressive pattern of stalking would cause her physical harm. Accordingly, Scott's first and second assignments of error are overruled.
Judgment affirmed.
BAIRD, P.J., BATCHELDER, J. CONCUR.