OPINION
{¶ 1} This is an appeal from the judgment of the Seneca County Common Pleas Court, which found Defendant-appellant, Dennis Smith, guilty of Menacing by Stalking and Complicity.
 {¶ 2} In 1996, Weldin Neff ran for the position of Seneca County Sheriff. His friend, Smith, supported him in his campaign. Conversely, Alice Dohner, a dispatcher at the Seneca County Sheriff's Department (SCSD) openly campaigned against Neff. Neff was elected in November of 1996 and took office in January of 1997. Between 1996 and 1997, Smith had several encounters with Dohner, which resulted in the indictment of both Neff and Smith for Menacing by Stalking in violation of R.C.2903.211(A) and complicity under R.C. 2923.03. Smith pled not guilty, and the case was tried to the trial court on November 26, 27 and 28, 2001.
 {¶ 3} At trial, Dohner testified and Smith concedes that in April of 1996, Smith pulled up along side Dohner's car communicating incomprehensibly and making facing at Dohner and the other people in the vehicle. Dohner testified that she felt uneasy about the incident.
 {¶ 4} Dohner further testified that in May of 1996, Dohner, her husband and two friends, traveled to Sears so that Dohner's husband could purchase a lawnmower. Dohner further testified and Smith concedes that as Dohner's husband was speaking to a clerk, Smith told the clerk not to sell the lawnmower to Dohner's husband as he had poor credit. As Dohner and her party were leaving, Smith stood outside and watched them leave the Sears' parking lot. Dohner testified that she was disturbed by this occurrence.
 {¶ 5} Dohner testified that when she was leaving her bank on three separate occasions, Smith was in his car in the parking lot, staring at her. She further testified when she left the bank on each occasion, Smith followed her and again sat in his car and watched her as she went to another store. Dohner also testified that she felt very uneasy about these encounters.
 {¶ 6} Dohner further testified that between fall of 1996 and spring of 1997, Smith pulled up to her car approximately seven times while she was driving alone on Market Street in Tiffin, Ohio and began waving his arms and making faces at her. Dohner also testified that in 1996, Smith would drive by her home at approximately 15 miles per hour in a 55 mile per hour zone.
 {¶ 7} Dohner and other employees of SCSD testified that after Neff took office, Smith was around the office two to four times a week. While he was not an employee of SCSD, Smith sometimes delivered the mail and had the access code to a side door. Additionally, Dohner testified and Smith concedes that when walking by the dispatch area, Smith would walk backwards and smirk at Dohner.
 {¶ 8} Dohner also testified that in February of 1997, Smith approached Dohner in the SCSD parking lot while she was investigating an accident and asked her "what do you think you are doing?" Dohner asserts that she was angry and scared as a result of this encounter. Carl Swanigan, a deputy in the SCSD testified that Smith left the office to go to the parking lot after he was told that Dohner was in the lot. Soon after this incident, Dohner notified the administrator of SCSD, Cora Bour (Bour), that she was fearful of Smith and concerned about her safety.
 {¶ 9} Bour testified that in May of 1997, Neff directed Bour to place an application for Smith to work as a part-time dispatcher in the dispatch area. Attached to the application was a note that asked Smith to arrange a time to observe in dispatch. Several witnesses testified that there was no dispatch position available. Bour also testified that Neff told her to place the application in the dispatch area when Dohner was working. Bour further testified that after Dohner learned this information, she was noticeably shaken and went home from work sick. Finally, Bour testified that Smith suggested that the only reason he was picking up the application was to upset Dohner. Glenn Studer, co-worker of Smith's at BP Oil (BP), suggested that Smith bragged about placing the application where Dohner would find it. Studer also testified that he asked Smith when he would leave the Dohners alone and Smith replied, "I won't quit until they're in their graves."
 {¶ 10} Dohner testified that after the application incident, Dohner saw a chiropractor and her family physician who prescribed a tranquilizer for her anxiety. Dohner also filed several complaints with her chain of command voicing her concerns as to her safety regarding Smith. A union agreement was reached wherein Neff agreed to keep Smith out of SCSD. However, employees at SCSD testified that Smith was seen in the office several times after the agreement was made.
 {¶ 11} Bour testified that in June of 1997, she informed Smith that he was upsetting Dohner, that Dohner meant business this time and that Smith should not come into SCSD anymore. After the conversation between Bour and Smith, Dohner did not see Smith in the office.
 {¶ 12} Finally, Dohner testified that as a result of Smith and Neff's actions, she was nervous often and changed her daily routine to avoid Smith. She stopped taking walks, stopped driving at night, began grocery shopping in another town, and had her husband follow her to work. Additionally, Dohner began seeing a psychologist to help handle her anxiety.
 {¶ 13} On November 28, 2001, the trial court denied a Crim.R. 29 motion of acquittal filed by Neff and Smith. On the same day, Neff was acquitted on all charges, but Smith was found guilty of both Menacing by Stalking and Complicity. The trial court stated when rendering Smith's verdict, "I think driving by somebody's house many times, pulling up beside somebody, driving along next to them, following somebody from one place to another, staring at them, uhm, going out into a parking lot talking to them when there's no other reason for being out there, even something as silly and stupid as walking out backwards and making faces at somebody, that's clearly designed to upset that person, cause mental distress; and in any reasonable human being, could cause them to believe this person intended physical harm."
 {¶ 14} Smith was sentenced on the Menacing by Stalking conviction to 180 days in jail, which was suspended. Smith was also sentenced to five years of probation subject to Smith serving 30 days in jail, spending 90 days on house arrest, paying a $1000 fine and costs, and having no contact with Dohner and other named individuals.
 {¶ 15} Smith now appeals asserting three assignments of error, which will be discussed out of order. Smith's second assignment of error asserts: "The trial court erred in finding appellant guilty of Menacing by Stalking pursuant to Ohio Rev. Code § 2903.211 because the evidence was not sufficient to demonstrate that appellant knowingly caused Alice Dohner to believe she would suffer physical harm or mental distress."
In looking at the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Smith
(1997), 80 Ohio St.3d 89, 113 (quoting State v. Jenks (1991),61 Ohio St.3d 259, at paragraph two of the syllabus). Furthermore, sufficiency is a test of adequacy and whether the evidence is legally sufficient is a question of law. Thompkins, 78 Ohio St.3d at 386.
 {¶ 16} R.C. 2903.211(A) provides" No person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." Additionally, as used in this section, mental distress refers to "any mental illness or condition that involves some temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment." R.C. 2903.211(D)(2). Furthermore, R.C. 2901.22 states that "a person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result * * *."[1]
 {¶ 17} Smith argues that while he engaged in some of these acts, no proof has been shown that Smith continued the activity after he was informed that Dohner was upset. However, under R.C. 2903.211, the standard is not whether Smith continued to act after being made aware that Dohner was upset rather the inquiry is whether Smith was aware that his conduct would probably cause Dohner mental distress. See City ofAkron v. Andrews (Jan. 26, 2000), Summit App. No. 19383. The evidence in this case demonstrated that within a fifteen month period of time, Smith pulled up alongside Dohner's vehicle many times making faces and gestures at her, that Smith followed her to the bank and from there to another location on three separate occasions, that he drove slowly past her home on several occasions, that Smith came to Dohner's place of work three to four times a week wherein he would stare and make faces at her, that he told a Sears employee that the Dohners' credit was not good and that Smith approached her in the parking lot of SCSD. Furthermore, the evidence also showed that Smith was attempting to upset Dohner with his actions. Smith told two of his coworkers at BP and Bour that he was picking up an application for a position as a dispatcher simply to upset Dohner. His co-workers at BP also testified that it appeared that Smith was trying to get even with Dohner and that Smith admitted to them that he was playing mind games with Dohner.
 {¶ 18} While Smith seems to focus on the fact that no explicit threats were made to Dohner to prove his innocence, explicit threats are not necessary to establish the elements of menacing by stalking. Statev. Smith (1998), 126 Ohio App.3d 193. Smith concedes in his brief that he committed several of the acts complained of, however, he claims that these are only childish behaviors and not criminal. We disagree. While each of Smith's actions taken alone may not rise to the level of criminal behavior under 2903.211, that determination changes when considering the cumulative effect of these encounters along with Smith's intent to upset Donor and her actual mental distress. Consequently, we do not find that the trial court erred when it found Smith guilty of Menacing by Stalking as a rational trier of fact could have found the essential elements of Menacing by Stalking proven beyond a reasonable doubt. Therefore, Smith's second assignment of error is overruled.
 {¶ 19} Smith's first assignment of error alleges, "The trial court erred in finding appellant guilty of menacing by stalking pursuant to Ohio Rev. Code. § 2903.211 because the statute is overboard [sic] as applied to the defendant."
 {¶ 20} Smith asserts that he properly preserved for review an "as-applied First Amendment objection" to R.C. 2903.211 by making the following statement during his Crim R. 29 motion for acquittal: "If this kind of conduct can constitute Menacing by Stalking, I suggest to you that every neighborhood dispute, every divorce case, every schoolyard scuffle is going to involve charges of Menacing by Stalking." We do not find that this language properly preserved the objection. However, even if the objection had been properly preserved, R.C. 2903.211 is not unconstitutional as applied to Smith.
 {¶ 21} To find a statute unconstitutional as applied, it must be determined that appellant did not have a "constitutionally protected right to engage in the type of activity he allegedly committed." Statev. Bilder (1994), 99 Ohio App.3d 653, 663-664. "The burden is upon the party making the attack to present clear and convincing evidence of a presently existing state of facts which makes the Act unconstitutional and void when applied thereto." Cleveland Gear Co. v. Limbach, (1988),35 Ohio St.3d 229, 231.
 {¶ 22} Smith asserts that R.C. 2903.211 is overbroad as applied to him because the statute criminalizes otherwise legal behavior. However, while Smith's acts when taken alone, were for the most part legal acts such as driving on a public road, sitting in a public parking lot, making faces at Dohner, entering the SCSD with the permission of Neff, appellant did not have a constitutionally protected right to knowingly cause Dohner to believe he would cause her physical harm or to cause her mental distress by engaging in those acts consistently over more than one year's time. See generally, State v. Grigsby (April 19, 1999), Stark App. No. 1998CA00319; State v. Benner (1994), 96 Ohio App.3d 327. Furthermore, Smith has failed to present any evidence which makes the statute void and unenforceable when applied to this conduct. Consequently, Smith's first assignment of error is overruled.
 {¶ 23} Smith's third assignment of error asserts, "The trial court erred in finding that the evidence presented was sufficient to find appellant guilty of Complicity to Menace by Stalking in violation of O.R.C. § 2923.03."
 {¶ 24} In this case, the trial court as trier of fact returned a verdict of not guilty as to both the menacing and complicity charges against defendant Neff. At the same time, the trial court returned a verdict of guilty as to the menacing by stalking charge against appellant Smith. However, in returning its verdicts, the trial court analyzed the evidence and then made the following findings on the record as to the complicity charges: "The Court is aware that the State believes if Mr. Neff did anything he joined in with Mr. Smith, he then is part of the conspiracy, but I don't believe there was evidence to show beyond a reasonable doubt that Mr. Neff joined Mr. Smith in any conspiracy." We believe this language was plainly a determination that the evidence was insufficient to establish beyond a reasonable doubt the existence of any
complicity between Mr. Neff and the appellant, and therefore constituted a verdict of not guilty as to the complicity charge against appellant.
 {¶ 25} This conclusion is supported by the fact that following the return of the verdicts, the trial court filed two judgment entries. In the first, the trial court purported to recite that guilty verdicts had been rendered against appellant on the menacing by stalking charge as well as the complicity charge, without mention of any sentence as to either charge. However, in the second judgment entry the trial court proceeded to sentence appellant only upon the menacing by stalking charge and made no mention whatsoever as to the complicity charge.
 {¶ 26} In sum, it is our conclusion that the purported reference to a finding of guilty as to complicity in the trial court's first entry, is both inconsistent with the actual verdict returned by the court and, in any event, is void for lack of any sentencing disposition. See, Crim.R. 32(C) (failure to set forth recital of guilty verdict and sentence does not constitute final judgment of conviction. State v.Lichtensteiger (Dec. 4, 2001) Van Wert App. No. 15-01-07.) Because we find there was no conviction returned as to the complicity charge, the third assignment of error is essentially moot. However, in view of the trial court's findings, it is also the conclusion of this court that any purported conviction of appellant for the complicity would be against the manifest weight of evidence and to this extent the third assignment of error is sustained.
 {¶ 27} The judgment and sentence of the trial court as to the charge of menacing by stalking is affirmed. However, the matter is remanded to the trial court to clarify the record by vacating that portion of the judgment entry of November 28, 2001 purporting to recite a guilty verdict against appellant as to the complicity charge.
Judgment affirmed in part and vacated in part and cause remanded.
 BRYANT and WALTERS, J., concurs.
[1] While the trial court used a slightly different definition for knowingly than is stated in R.C. 2901.22, the results are the same under either definition.