[Cite as *Cleveland v. McCoy*, 2016-Ohio-3451.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103276**

# CITY OF CLEVELAND

PLAINTIFF-APPELLEE

vs.

# SHAUNTEE T. MCCOY

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cleveland Municipal Court
Case No. 2015 CRB 002758

**BEFORE:** Stewart, J., Kilbane, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 16, 2016

**ATTORNEY FOR APPELLANT**

John W. Hawkins
7417 Salida Road
Mentor, OH 44060


**ATTORNEYS FOR APPELLEE**

Barbara A. Langhenry
Director of Law
City of Cleveland Law Department
601 Lakeside Avenue, Suite 106
Cleveland, OH 44114

Kimberly G. Barnett-Mills
Jaclyn R. Schultz
Assistant City of Cleveland Prosecutors
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH 44113

MELODY J. STEWART, J.:

{¶1} The court, sitting without a jury, found defendant-appellant Shauntee McCoy guilty of a single count of aggravated menacing on evidence that he threatened to kill the victim and their two children by throwing them "off of a bridge." McCoy assigns two errors for our review: (1) the court erred by allowing the city to present evidence of a previous incident of violence against the victim and (2) the court's verdict was against the manifest weight of the evidence. We find no error and affirm.

{¶2} McCoy's first assignment of error complains that the court erred by allowing, as other acts evidence, the victim's testimony that he struck her several years prior to the events giving rise to the charges in this case.

{¶3} Evid.R. 404(B) prohibits the introduction of evidence of other crimes or acts to "prove the character of a person in order to show action in conformity therewith." The evidence may, however, "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Decisions to admit other acts evidence under Evid.R. 404(B) rest within the sound discretion of the trial court. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, syllabus.

**{¶4}** The offense of aggravated menacing is committed when a person knowingly causes another to believe that "the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family." R.C. 2903.21(A). Because the offense of aggravated menacing contains a subjective element of apprehension, evidence of a defendant's violent character is admissible to prove that the victim believed that the defendant would cause physical harm. *State v. Carter*, 1st Dist. Hamilton Nos. C-090490, C-090491, and C-090492, 2010-Ohio-1061, ¶ 10; *State v. Speer*, 10th Dist. Franklin No. 12AP-893, 2013-Ohio-5444, ¶ 20; *State v. Williams*, 2d Dist. Montgomery No. 13216, 1992 Ohio App. LEXIS 5999 at *7-8 (Nov. 23, 1992). *See also State v. Bilder*, 99 Ohio App.3d 653, 658, 651 N.E.2d 502 (9th Dist.1994) ("other acts evidence can be particularly useful in prosecutions for menacing by stalking because it can assist the jury in understanding that a defendant's otherwise innocent appearing acts, when put into the context of previous contacts he has had with the victim, may be knowing attempts to cause mental distress.").

**{¶5}** Even if other acts evidence is admissible, the court must "consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice." *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20, citing Evid.R. 403.

{¶6} The victim testified that she and McCoy had a relationship with "a lot of physical domestic violence, mental domestic violence, just a lot of stress." The victim described an incident that occured in 2012, before they were married,[1] where McCoy "punched me in my head so hard that I lost my hearing for three months." The victim testified that she did not report that incident to the police at the time because McCoy told her that "the funeral home was going to be dressing me pretty soon, if I were to say anything about it." The victim went on to testify that McCoy's conduct followed a cycle: "lot of violence, lot of sorry's — back together."

{¶7} At trial, McCoy did not object to the admission of evidence about his violent history with the victim, but objected to the amount of evidence that the city could offer on that history. Defense counsel told the court:

> If the city is proving the traits of his character, I believe that's been established. I don't know, if it goes beyond where it becomes fairly [sic] prejudicial to the defendant, if [the assistant prosecuting attorney] goes through every single instance — we're here for what happened December 20th, not to go through history. It's been established that he's been violent in the past. I don't think we need to go into specifics.

---

[1] The parties were married sometime after the 2012 incident. They divorced in August 2014, prior to trial in this case.

{¶8} The court recognized both the city's obligation to prove the charged offense with evidence that the victim reasonably believed that McCoy would carry out his threat and the possibility of unfair prejudice to McCoy from the quantity of evidence showing his violent history with the victim. The court told the city it could go into McCoy's history "a little more," but instructed the city to keep in mind that "the Court doesn't want to rely on issues that were never charged or followed through."

{¶9} McCoy argues that the city offered the evidence not to show that he committed aggravated menacing, but to show that he beat the victim "*again.*" (Emphasis sic.) We reject this argument because the reasonableness of the victim's apprehension that McCoy would follow through with his threat to harm her could not be divorced from his violent history with her. Had the charges against McCoy been the first time he threatened the victim, he could plausibly argue that the threat was hyperbole that could not be taken seriously. His violent history with the victim, however, supported the sincerity of the victim's belief that McCoy would cause her serious physical harm.

{¶10} The court recognized the need to balance the admission of McCoy's violent history with the victim, as an element of aggravated menacing, against the possibility of unfair prejudice to him. We have no basis for finding that the court's ruling on McCoy's objection was so irrational or arbitrary as to constitute an abuse of discretion, particularly when the court was aware of McCoy's objection that the evidence was cumulative and thus prejudicial.

**{¶11}** McCoy next argues that the court's verdict was against the manifest weight of the evidence. He argues that this was a "garden-variety" child custody dispute pitting one parent against another, and that apart from the victim's testimony regarding McCoy's violent history with her, the victim offered no credible evidence from which she could have reasonably believed his threat to harm her.

**{¶12}** The manifest weight of the evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 340, 515 N.E.2d 1009 (9th Dist.1986). The use of the word "manifest" means that the trier-of-fact's decision must be plainly or obviously contrary to all of the evidence. This is a difficult burden for an appellant to overcome because the resolution of factual issues resides with the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact has the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

{¶13} The victim testified that she and McCoy have two young children. On the day the offense occurred, McCoy had a scheduled visit with the children. McCoy asked the victim to transport the children to his apartment. The victim agreed that she would transport the children for a "two or three hour visit." She told McCoy what time she would return for the children, telling him to have his phone nearby so as not to delay the exchange. When the victim returned to McCoy's apartment and called him, he did not answer his phone. Frustrated by his failure to answer her call and unable to enter his locked building, the victim called McCoy's daughter (the daughter and the victim were unrelated). McCoy came down to the lobby of the building, "yelling and screaming, making threats." The victim said that she did not know why McCoy was upset, but that he said "get the F up in my apartment now. If you really want them, you get the F up in my apartment, I'm going to F you up. I'll fucking F all you guys up[.]" The victim refused to enter his apartment, at which point McCoy told her that "I'll kill you all" and that he would "throw us off the bridge." She testified that these threats scared her:

> I was afraid because I know this man, and based on his history, he has done harm to me, and I just feel like he has a lot of hate for me, that he would definitely harm my — our kids. That was a possibility that could happen, you know.

{¶14} The victim called the housing authority police who had jurisdiction over McCoy's apartment building, but said that they refused to help. She then went to the Cleveland Police Department the following day and filed a report. A police officer accompanied the victim and facilitated the exchange of the children. No arrest was made at the time.

{¶15} McCoy testified that he and the victim had an ongoing custody dispute with the children and that he had been forced to call the police 40 to 50 times in order to enforce his visitation rights. McCoy said that on the night the offense occurred, it was his understanding that the children would stay for the weekend. He testified that the victim dropped the children off and that the visitation went smoothly with no further contact with the victim, although he conceded that he and the children fell asleep while watching a movie and missed several phone calls from the victim. Sometime between 11 p.m. and 12 a.m., the housing authority police contacted McCoy. He apparently established to their satisfaction his right to have the children because they left without asking that he return the children. The following afternoon, McCoy noticed a city of Cleveland police car in the parking lot of his apartment building. He then returned the children to the victim without incident.

**{¶16}** With the parties giving polar opposite versions of the facts, this is not a case where we can say that the court's verdict is manifestly against the weight of the evidence. The court accepted the victim's version of events. This was a plausible finding from the evidence. We recognize that this case involved an ongoing dispute over child custody and visitation. But even if McCoy was correct about his visitation rights, that fact did not give him the right to threaten the victim with serious physical harm if she deviated from the visitation schedule. The victim testified that she believed that McCoy would cause her serious physical harm because he had previously harmed her. Sitting as the trier of fact, the trial judge was in the best position to assess her credibility. We have no basis to conclude that the court lost its way by doing so and finding McCoy guilty.

**{¶17}** Judgment affirmed.

It is ordered that appellee recover of said appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, JUDGE

MARY EILEEN KILBANE, P.J., and
EILEEN T. GALLAGHER, J., CONCUR