The STATE of Ohio, Appellee,

v.

SMITH, Appellant.

[Cite as *State v. Smith* (1998), 126 Ohio App.3d 193.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 96 C.A. 83.

Decided Feb. 11, 1998.

*Dionne M. Almasy,* Youngstown City Prosecutor, and *Michael Maillis,* Assistant City Prosecutor, for appellee.

*Warren "Bo" Pritchard* and *Robert R. Melnick,* for appellant.

Cox, Judge.

This matter presents a timely appeal from a decision rendered by the Youngstown Municipal Court, Mahoning County, Ohio, denying the motion to arrest judgment filed by defendant-appellant, Alan Smith.

Appellant Alan Smith was charged with menacing by stalking in violation of R.C. 2903.211 as a result of his alleged conduct in following the complainant-doctor during his travels through the city of Youngstown on several occasions from October 1993 through June 18, 1994. It was claimed that appellant engaged in a pattern of conduct which caused the complainant to believe that appellant would cause him physical harm and/or mental distress. Following discovery, this matter proceeded to jury trial.

The complainant in this case testified at trial with regard to appellant's conduct concerning the three specific dates set forth by plaintiff-appellee, state of Ohio, in its bill of particulars which was filed with the trial court. The complainant offered that on both October 16, 1993 and October 23, 1993, appellant followed him from his place of employment at the Mahoning Women's Center located on Market Street in Youngstown, Ohio, pulled his vehicle beside the vehicle being operated by the complainant and continually stared at him. The complainant stated that appellant's actions caused him mental distress because he did not know what appellant's intentions were or what he would do.

The complainant further offered that on June 18, 1994, appellant exhibited the same type of behavior as on October 16, 1993 and October 23, 1993, but then proceeded to shout, "Applegate, you're fucking dead, you baby killer, you will

never learn. I am going to teach you. And where is your wife." Because of appellant's behavior, the complainant stated that he and his family changed their normal routines and lived with the constant fear that something was going to happen to them. The complainant testified that his wife had to seek psychological counseling and that he sought spiritual counseling from his church pastor.

Appellant did not testify at trial on his own behalf. However, witnesses testifying for him basically attested to his character and his nature as a nonviolent individual who rarely, if ever, uttered profane words. None of the witnesses who testified on appellant's behalf had personal knowledge or were able to speak about the events for which appellant was charged and which were specifically delineated in appellee's bill of particulars.

On February 3, 1995, the jury ultimately found appellant guilty of menacing by stalking. The trial court rendered judgment upon the jury verdict, and appellant was sentenced to an incarceration term of one hundred eighty days, with one hundred twenty being suspended, was ordered to pay a fine of $1,000, with $500 being suspended, and was required to serve probation for a period of one year.

On February 17, 1995, appellant's counsel filed a pleading with the trial court styled as a Civ.R. 50(B) motion for judgment notwithstanding the verdict. On March 3, 1995, appellant's counsel filed a notice of appeal directed to the February 3, 1995 verdict and sentencing order with the court of appeals clerk. A copy of the notice of appeal was not properly filed with the trial court until March 8, 1995. By journal entry filed January 4, 1996, this court *sua sponte* dismissed appellant's appeal as being untimely filed.

Subsequent to this court's dismissal order, on April 18, 1996 the trial court filed its judgment entry construing appellant's motion for judgment notwithstanding the verdict to be a motion to arrest judgment pursuant to Crim.R. 34 and denying it. Appellant then filed another notice of appeal on May 10, 1996. By journal entry filed July 15, 1996, this court denied appellant's request to reinstate his original appeal and specifically provided that its review in this matter would be limited to the trial court's judgment entry that denied appellant's motion to arrest judgment. Crim.R. 34 states:

"The court on motion of the defendant shall arrest judgment if the indictment, information, or complaint does not charge an offense or if the court was without jurisdiction of the offense charged."

In our journal entry of July 15, 1996, we found that appellant did not challenge the jurisdiction of the trial court or assert that the complaint failed to charge a criminal offense in his motion to arrest judgment. In that regard, we would affirm the decision of the trial court denying appellant's motion to arrest judgment. However, we will nonetheless consider and address the merits of each

alleged error in the interest of ensuring that substantial justice has been afforded to appellant.

Appellant sets forth seven assignments of error on appeal.

Appellant's first assignment of error alleges:

"The trial court erred in giving this case to the jury on the stalking by menacing charge since there was no evidence showing a pattern of conduct of two or more actions or incidents closely related in time."

R.C. 2903.211 states:

"(A) No person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."

In providing a definition of the term "pattern of conduct," R.C. 2903.211(C) states:

"(1) 'Pattern of conduct' means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents."

■ Appellant argues that appellee failed to establish the *prima facie* elements necessary to sustain a guilty verdict against him for menacing by stalking in that it presented no evidence to show two or more actions or incidents closely related in time that would satisfy the statutory definition of "pattern of conduct." Appellant maintains that the testimony offered by the complainant referred to actions that would not lead a reasonable person to conclude that he was in physical danger.

Specifically, appellant points out that the complainant testified on cross-examination that on both October 16, 1993 and October 23, 1993, the extent of appellant's behavior was pulling up beside him and staring at him. Appellant further points out that evidence and testimony were offered at trial by logistics ground commander Clifford D. Smith II from the Vienna Air Base, which indicated that appellant was present for Air Force Reserve duty on October 16, 1993 and did not leave the base until 5:08 p.m. Since the complainant stated on cross-examination that he could not remember the exact time at which he left the Mahoning Women's Center on October 16, 1993 but offered that the latest it could have been was 6:00 p.m., appellant maintains that he had an alibi for that date, as he could not have reached the Mahoning Women's Center from Vienna Air Base by the time the complainant left for the day.

With regard to the incident on June 18, 1994, appellant contends that since the complainant's brother, who was also in his vehicle at the time in question, did not testify, appellee could offer no corroboration for the allegations set forth in its bill

of particulars. Additionally, appellant believes that regardless of whether the incident on June 18, 1994 occurred as alleged by the complainant, this was only one incident and there was no other reliable evidence placed in the record to indicate that appellant had engaged in similar alleged threatening conduct to constitute a "pattern of conduct" as required by R.C. 2903.211.

Appellant states that staring at someone or following him without independent evidence of two or more incidents involving threats of bodily harm beyond the self-serving assertions of a complainant that he was in physical danger fails the "pattern of conduct" definition set forth in R.C. 2903.211. Therefore, appellant concludes that appellee failed to meet its burden of proof and the trial court either should have refused to give this case to the jury or should have granted appellant's motion to arrest judgment.

The Ohio Supreme Court in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, has recently held that "weight of the evidence" and "sufficiency of the evidence" are not synonymous legal concepts. "Sufficiency" is a legal standard, which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. *Id.* In essence, sufficiency is a test of adequacy. Whether the evidence presented in a case is legally sufficient to sustain a verdict is a question of law and a conviction based upon legally insufficient evidence constitutes a denial of due process. *Id.* To reverse a trial court's judgment on the finding of insufficient evidence, an appellate court need only have a concurring majority of the reviewing panel. *Id.*

R.C. 2903.211 requires a *belief* on the part of one person that another will cause the person physical harm or mental distress. Contrary to appellant's apparent contention, explicit threats are not necessary to establish the elements of menacing by stalking as set forth in R.C. 2903.211. The complainant in the case at bar testified as to the incidents for which appellant was charged and repeatedly stated that he believed appellant might harm him and that he feared for his life. Appellant offered *no* evidence or testimony to refute the complainant's version of events. Appellant's witnesses testified solely to his nature as a nonviolent individual; they had no independent information or knowledge of the incidents for which appellant was charged.

With regard to the testimony which was offered by logistics ground commander Clifford D. Smith II, although he testified that appellant signed out from the Vienna Air Base at 5:08 p.m. on October 16, 1993, he did not personally see him do so. Furthermore, Major Smith stated that there was nothing to stop someone from leaving the air base. Major Smith also stated that he came directly from

the air base to the court on the day of trial and the trip took him only thirty to thirty-five minutes.

The jury was in the best position to judge the credibility of the witnesses presented at trial. The credibility of conflicting testimony and the weight to be accorded evidence are primarily for the trier of fact. *State v. Scott* (1986), 26 Ohio St.3d 92, 26 OBR 79, 497 N.E.2d 55. It was within the purview of the jury to believe one witness more than another. Based upon a thorough review of the record and transcript on appeal, there was sufficient evidence offered at trial to establish a "pattern of conduct" on the part of appellant to present this case to the jury.

Appellant's first assignment of error is found to be without merit.

Appellant's second assignment of error alleges:

"The court erred to the prejudice of appellant in permitting this charge of menacing by stalking to go to the jury and not sustaining appellant's post–verdict motion to arrest judgment/acquittal/judgment n.o.v. when the manifest weight of the evidence failed to satisfy the requirements of R.C. 2903.211 on two grounds: (1) no showing of a pattern of conduct to cause reasonable belief of physical harm in addition to an alibi defense for one of the alleged incidents and (2) no corroboration of victim's alleged mental distress with a showing of psychiatric/psychological treatment as required by the statute."

In addition to providing a definition of the term "pattern of conduct," R.C. 2903.211(C) provides a definition of the term "mental distress" as follows:

"(2) 'Mental distress' means any mental illness or condition that involves some temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment."

Appellant reiterates the arguments set forth under his first assignment of error and again states that appellee presented no evidence to show that he intended immediate violence or bodily harm to the complainant, or took affirmative steps to act on any alleged threats. Appellant maintains that the type of conduct complained of in this case requires a "knowing" *mens rea* and that merely following and staring at someone, without more, is not conduct which knowingly causes physical harm under any standard of reasonableness.

Appellant again points to the fact that the version of events on June 18, 1994 offered by the complainant was not corroborated, since the complainant's brother was also in the vehicle at the time in question and did not appear to present testimony at trial. Appellant also submits that he presented witness testimony as to his reputation for nonviolence at trial. Even if the complainant's version of events on June 18, 1994 was accurate, appellant contends that this was only one

incident and thus does not satisfy the two-incident requirement set forth in R.C. 2903.211. Appellant further continues to maintain that as to the incident on October 16, 1993, he was on Air Force Reserve duty until 5:08 p.m. and would not have been able to travel to the complainant's workplace in order to commit the act for which he was charged.

Appellant offers that since this matter deals with the politically sensitive issue of abortion, clearly one person's perceived harassment is another person's free speech. Appellant claims that all he ever attempted to do was call attention, by protesting and picketing, to the complainant's activities as a doctor who performed abortions.

■ Appellant additionally argues that appellee proffered no evidence of psychiatric treatment as required under R.C. 2903.211. At trial, the complainant offered no documentary evidence with regard to actual psychological or psychiatric treatment received, but stated that his wife sought psychological counseling and he sought spiritual counseling as a result of their mental distress resulting from appellant's behavior. Therefore, appellant maintains that since neither specific testimony nor documentary evidence was presented to show the existence and/or extent of the complainant's mental distress, the trial court erred in failing to direct an acquittal and subsequently erred in failing to grant appellant's motion for arrest of judgment.

R.C. 2903.211 requires that the offender "knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." "Knowingly" is one of the culpable mental states defined in R.C. 2901.22(B), which states:

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

■ Again appellant misconstrues the statute in question by contending that his conduct in following someone and staring at him was not the type of conduct which knowingly causes physical harm. It was not necessary that appellant knowingly caused physical harm and/or mental distress. It was enough that appellant knowingly followed the complainant, stared at him, and eventually shouted threatening words, thereby causing the complainant to *believe* that appellant would cause him physical harm or mental distress.

Appellant's arguments as to the alleged lack of evidence concerning a "pattern of conduct" were previously addressed under his first assignment of error. Although appellant refers to the manifest weight of the evidence, he is essentially

arguing that the evidence offered at trial was not sufficient to present the case to the jury and, therefore, *Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541, controls.

 Appellant's contentions with regard to the issue of mental distress are also misplaced. Expert testimony is not required to establish the existence of mental distress of a victim for the purpose of proving an element of menacing by stalking. *State v. Tichon* (1995), 102 Ohio App.3d 758, 658 N.E.2d 16. The court in *Tichon* held that a victim's testimony was sufficient to establish mental distress since the jurors could rely on their own experiences to determine whether the victim suffered the requisite mental distress as a result of the defendant's actions. Therefore, the complainant's testimony in this matter constituted sufficient evidence on the issue of mental distress to present the case to the jury.

Based on the foregoing, we find that the trial court did not err in failing to direct an acquittal or in failing to grant appellant's motion for arrest of judgment.

Appellant's second assignment of error is found to be without merit.

Appellant's third assignment of error alleges:

"The court erred to the prejudice of appellant in limiting the scope of cross-examination and denying introduction of extrinsic evidence against complainant–Applegate under Evid.R. 608(B) when impeachment for bias per Evid.R. 616 allows for a showing of specific instances of conduct by the introduction of extrinsic evidence and controls over Evid.R. 608."

In his motion for arrest of judgment, appellant claimed that the facts and evidence presented to the jury at the within trial did not conform to the requirements set forth in R.C. 2903.211. Specifically, appellant complains that in response to appellee's motion *in limine,* the trial court limited defense counsel's scope of cross-examination and did not permit the jury to hear crucial evidence concerning certain instances of the complainant's own conduct.

With regard to this issue and prior to continued discussion with counsel for both parties, the trial court stated:

"THE COURT: The issue is, we are about ready to proceed on cross-examination of the witness in chief and the issue that's been raised and we have partial resolution of the motion in limine, it is about the scope of the cross-examination relative to the integrity or the credibility of the witness.

"The law seems very clear that although there is some limited ability to cross-examine with respect to bias or interest, and I think that's not an issue. We can discuss the fact that he has an interest in this. He makes money from it, et cetera.

"But the issues that the defendant seems to want to bring in seem to fall squarely within Rule 608, evidence of character and conduct of a witness. And

the law very clearly says the credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation. And specifically states further that specific instances of the conduct of a witness may not be proved by extrinsic evidence. So generally speaking that means no extrinsic evidence in terms of documents, journal entries, other witnesses, whatever may be proved unless there is a prior inconsistent statement.

"But as the notes very clearly state, let's say he denies it, you are stuck with that denial. You can't—If the witness—I am going to quote from the summary. 'If the witness on cross examination denies a prior untruthful act, the cross examiner is stuck with the answer. He may not seek to prove the occurrence of that untruthful act through extrinsic evidence.' So even if he lies on the stand, you can't prove that by extrinsic evidence. You may press hard for an admission provided you are proceeding in good faith."

Appellant took exception to the trial court's ruling and stated reasoning. Appellant maintains that the focus must be on the purpose for the impeachment in determining the scope of cross-examination. Appellant offers that Evid.R. 608 concerns impeachment by means of character evidence. Evid.R. 608 does not deal with other methods of impeachment, such as bias, which are governed by Evid.R. 616. Appellant correctly states that Evid.R. 608 limits the admissibility of extrinsic evidence to proof of specific acts of conduct reflecting upon untruthful character.

Appellant believes that because the complainant was appellee's primary witness, defense counsel should have been given wide latitude on cross-examination to ensure fairness and to address the possibility of improper motive. Appellant alleges that the complainant, like other individuals in a line of work that although legal is less than respected, wishes to make a lot of money as quietly as possible. Therefore, appellant submits that the complainant had a vested interest in doing what was necessary to prevent appellant from protesting and picketing at the Mahoning Women's Center and in the complainant's residential neighborhood.

Appellant points to several incidents involving the complainant, which he believes show a pattern of deception to gain monetary or employment advantage and which the jury was not permitted to consider in assessing the complainant's credibility. First, appellant points out that the complainant filed a RICO action against him and others in federal court, which was ultimately dismissed. Appellant contends that he should have been allowed to introduce extrinsic evidence from that case during the complainant's cross-examination for the purpose of showing improper motive and bias.

Next, appellant maintains that defense counsel should have been permitted to introduce extrinsic evidence in the form of entries from a child support hearing wherein the complainant claimed not to be employed and for which he was later

held in contempt and jailed for concealing income. Appellant states that on direct examination in the case at bar, the complainant testified that he was employed during the same time period within which he had earlier claimed at a child support hearing that he was not employed.

Finally, appellant complains that defense counsel was not permitted to offer examples of problems that the complainant had with his former medical partner, specifically with regard to the complainant's alleged untruthful representations as to previous medical malpractice cases against him on an employment application. Appellant also points to a similar bad act committed by the complainant regarding the taking of money from his own mother's living-trust account, which defense counsel was not permitted to address.

Appellant concludes that the foregoing examples provide evidence of a previous improper motive and bias on the part of the complainant that go far beyond the application of Evid.R. 608 and impeachment of a character witness for truthfulness alone. Therefore, appellant urges that the trial court erred in relying upon Evid.R. 608 and in failing to allow defense counsel a liberal cross-examination of the complainant.

Evid.R. 608(B) provides:

"Specific Instances of Conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."

Additionally, Evid.R. 616 states:

"Bias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence."

Evid.R. 608(B) precludes the admission of extrinsic evidence as it relates to conduct reflecting upon untruthful character unless clearly probative. Conversely, Evid.R. 616 explicitly provides for the admissibility of extrinsic evidence to show bias or improper motive. The issue before this court is whether the trial court abused its discretion when it determined that defense counsel's desired scope of inquiry fell within the parameters of Evid.R. 608(B) rather than Evid.R. 616. An abuse of discretion connotes more than an error of law or judgment; it

implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 16 O.O.3d 169, 404 N.E.2d 144.

It would not appear from a review of the record and transcript on appeal that the trial court abused its discretion in this regard, as the specific instances of conduct which defense counsel sought to introduce by extrinsic evidence reflected upon the complainant's character for truthfulness rather than his potential for bias or improper motive.

Defense counsel clearly sought to show that the complainant was untruthful and in fact, stated on the record that the complainant had previously lied on an employment application with his former medical partner regarding pending malpractice cases against him and had also lied during a child support hearing regarding his employment. Nonetheless, the transcript reflects that defense counsel did question the complainant on cross-examination about his testimony at a child support hearing concerning his employment and further questioned the complainant about the RICO action that he filed against appellant.

Based upon the foregoing, we find that the trial court properly found that the defense counsel's proposed evidence fell within the parameters of Evid.R. 608(B) and, therefore, did not abuse its discretion in limiting the cross-examination of the complainant.

Appellant's third assignment of error is found to be without merit.

Appellant's fourth assignment of error alleges:

"The trial court erred to the prejudice of appellant by failing to omit instructions to the jury concerning 'physical harm' (as defined in R.C. Sec. 2901.01(E) and O.J.I. 503.11) and 'mental distress' (as defined in R.C. Sec. 2901.22(B) and O.J.I. 409.11) since both require a showing of psychiatric treatment and there was no such evidence presented by the prosecution at bar."

Appellant cites *Riley v. Cincinnati* (1976), 46 Ohio St.2d 287, 75 O.O.2d 331, 348 N.E.2d 135, for the proposition that it is reversible error for a trial judge to charge the jury on an issue where there is no evidence to support the issue. Appellant argues that other than the complainant's self-serving testimony to the effect that appellant's actions caused him mental distress that forced him to seek spiritual counseling and that he feared for his physical safety, appellee offered no documentary or expert evidence of treatment to corroborate the complainant's alleged physical and/or mental harm.

Appellant alleges that the complainant had a strong bias against him and in favor of conviction and since the complainant's medical expertise was in obstetrics, not psychiatry or general medicine, he was not qualified to testify as an expert concerning his own physical harm and mental distress. Appellant concludes that without an adequate evidentiary foundation upon which to rely, the

trial court erred in giving the jury instructions concerning physical harm and mental distress.

Given the discussion under appellant's second assignment of error, wherein it was stated that expert testimony regarding the element of mental distress was not necessary, appellant's argument that an adequate evidentiary foundation was not presented with regard to that issue is not well taken. Additionally, R.C. 2903.211 requires a showing of physical harm *or* mental distress. Since sufficient evidence was presented to show that the complainant suffered mental distress as a result of appellant's conduct, it was not necessary to offer evidence as to physical harm.

Furthermore, appellant's reliance upon *Riley* is misplaced as that case dealt with a civil matter wherein a covenant not to sue a tortfeasor who was primarily liable did not act to bar a lawsuit on secondary liability. *Riley* is not factually analogous to the case at bar.

Following a thorough review of the record and transcript on appeal, it is clear that the trial court did not err by instructing the jury on the elements of physical harm and mental distress.

Appellant's fourth assignment of error is found to be without merit.

Appellant's fifth assignment of error alleges:

"The trial court erred to the prejudice of appellant in overruling defense counsel's objections at trial to the state's failure to provide a detailed bill of particulars setting up the nature of each offense, specific dates, time and places of the alleged acts so that the appellant could prepare an adequate defense."

Appellant asserts that appellee's response to defense counsel's request for a bill of particulars failed to specifically delineate alleged incidents for which there was testimony presented at trial. Appellee's bill of particulars set forth incidents which occurred on October 16, 1993, October 23, 1993 and June 8, 1994. Appellant states that not only did appellee err in offering the date of June 8, 1994 in its bill of particulars when clearly it was making reference to June 18, 1994 and presented testimony relating to the latter date, but it also failed to provide dates, times and places with regard to testimony which was offered at trial concerning a residential picketing issue and an incident involving the loosening of the lug nuts on the complainant's vehicle, for which the culprit was not known or apprehended.

Given the testimony offered as aforementioned, appellant maintains that appellee's bill of particulars was not sufficiently specific to allow defense counsel an opportunity to prepare an adequate defense. Appellant states that as a result of appellee's actions, defense counsel was unable to conduct an investigation as to

whether or not he had other alibis or defenses for the alleged incidents not mentioned in appellee's bill of particulars.

Appellant cites *State v. Webb* (1991), 72 Ohio App.3d 749, 596 N.E.2d 489, wherein the Ohio Supreme Court held that the applicable test on the adequacy of a bill of particulars is whether the absence of specific references to conduct prejudices a defendant's ability to defend himself. Appellant further cites *State v. Luttrell* (Aug. 30, 1993), Stark App. No. CA–9207, unreported, 1993 WL 370651, for the proposition that where a bill of particulars fails to include references to specific acts and dates of misconduct that form part of a conviction at trial, a defendant is prejudiced in not being aware of all allegations against him and any conviction must be reversed.

Appellant offers that the foregoing proposition is particularly true where charges against a defendant allege a continuing course of conduct and testimony is presented to give the jury an impression of a pattern of conduct, such as in the case at bar. Appellant points out that over defense counsel's objections, the trial court permitted appellee to question the complainant on direct examination about other incidents not set forth in its bill of particulars, thereby prejudicing appellant. Appellant concludes that the trial court erred in overruling those objections, given appellee's failure to provide a detailed bill of particulars.

■ Appellee's bill of particulars was sufficiently specific with regard to the offenses with which appellant was charged and thereby did not prejudice appellant's ability to defend himself. Furthermore, the court in *Tichon* held that "other acts" evidence pursuant to Evid.R. 404(B) was properly admitted to show that the defendant was engaged in a patter of conduct aimed at causing his victim mental distress, as an element of menacing by stalking. 102 Ohio App.3d 758, 658 N.E.2d 16.

■ Testimony elicited from the complainant concerning appellant's picketing activities at his residence was offered merely to show a continuing pattern of conduct on behalf of appellant. The testimony was not refuted by appellant, and contrary to appellant's contention, the record does not reflect that defense counsel objected to the testimony during direct examination.

Additionally, testimony regarding alleged damage which was done to the complainant's vehicle was elicited from the complainant on direct examination in response to a question posed by the prosecuting attorney. The prosecuting attorney inquired as to whether the complainant had occasion to call the police relative to appellant's activities other than the times of the events for which appellant was charged in this case. The complainant indicated that given his past trouble with appellant and given appellant's constant presence at his place of employment, he believed appellant might have been involved with damaging his

vehicle. Defense counsel did not object to this line of questioning. Thus, appellant should not now be heard to complain on appeal concerning any alleged error.

Given the foregoing, we find that the trial court did not err in overruling any alleged objection defense counsel may have raised with regard to appellee's bill of particulars or the testimony offered on direct examination by the complainant as aforementioned.

Appellant's fifth assignment of error is found to be without merit.

Appellant's sixth and seventh assignments of error are related, will therefore be discussed together, and allege as follows:

"The jury's verdict must be overturned since the menacing by stalking statute is unconstitutional on its face and as applied in that it violates both levels of the void for vagueness doctrine which results in a chilling effect upon free speech/expression.

"The jury's verdict must be overturned since R.C. Section 2903.211 (menacing by stalking) is unconstitutionally overbroad on its face and as applied."

Appellant argues that R.C. 2903.211 infringes upon first amendment rights in that it is void for vagueness. Appellant states that even though the statute in question provides a definition of the phrase "pattern of conduct," in order to sustain a criminal conviction against an attack based on vagueness, a criminal statute must give a person of ordinary intelligence who seeks to avoid its penalties fair notice of the conduct required or prohibited and such person should not have to guess at the meaning of said statute. See *Columbus v. Kasper* (1989), 61 Ohio App.3d 776, 573 N.E.2d 1163. Appellant continues that R.C. 2903.211 does not define with specificity the meaning of the phrase "pattern of conduct."

Appellant alleges that he engaged in protected First Amendment activity when he picketed against the complainant. Appellant submits that driving by the complainant and staring at him, without any threatening conduct, were also legal. Appellant claims that he has no idea what actions or incidents that he allegedly committed constituted a "pattern of conduct." Appellant suggests that since the language and application of R.C. 2903.211 touch upon First Amendment rights with regard to free speech and expression, the statute must be carefully scrutinized.

Appellant next cites *Kasper, supra,* for the proposition that criminal statutes that include prohibitions on both legal and illegal conduct within their reach are considered overbroad. Appellant maintains that R.C. 2903.211 is also overbroad, since it attempts to punish both legal as well as illegal activity. Appellant argues that he has every right to advocate his position as a "pro-lifer" even though that

advocacy may not be favored or approved of by the recipient, in this case, the complainant. Appellant states that although the complainant may not appreciate his carrying signs which depict the complainant as a "baby killer," that action constitutes free speech and does not cause bodily or mental harm.

Appellant urges that R.C. 2903.211, by definition, is unconstitutional on its face and as applied since it attempts to impose restrictions upon free speech rights without delineating what conduct is prohibited and what conduct is protected. Appellant asserts that pursuant to *Kasper*, he has every right to free expression unless there is some clear and present danger to indicate that the free expression will carry over into actual physical violence that would put an objective person in the position of fearing for his physical safety.

Initially, we note that there is a strong presumption in favor of the constitutionality of statutes. *State v. Anderson* (1991), 57 Ohio St.3d 168, 566 N.E.2d 1224. The party challenging a statute must prove that it is unconstitutional beyond a reasonable doubt. *Id.* R.C. 2903.211 is not unconstitutionally vague. See *State v. Dario* (1995), 106 Ohio App.3d 232, 665 N.E.2d 759. The statute's definition of "pattern of conduct" as being two or more actions or incidents is simple and easy to understand. *Id.* Any alleged ambiguity is insufficient to render its meaning incomprehensible to persons of ordinary intelligence and the statute's scienter requirement (knowingly) vitiates any claim that the statute's alleged vagueness could lead a person of ordinary intelligence into misunderstanding what was prohibited. *Id.*

A menacing-by-stalking statute is likewise not subject to a facial challenge on vagueness grounds on the basis that it chills constitutionally protected conduct. *State v. Benner* (1994), 96 Ohio App.3d 327, 644 N.E.2d 1130. Appellant was not prosecuted because he picketed an abortion clinic. He was prosecuted because he engaged in a pattern of conduct that caused the complainant mental distress and caused him to believe that appellant would cause him physical harm. It is not within the protection of the First Amendment's guarantee of free speech to knowingly cause another to believe that one will cause physical harm or mental distress to him as forbidden by R.C. 2903.211. *Id.*

Further, R.C. 2903.211 is not unconstitutionally overbroad, as the First Amendment does not protect the type of activity prohibited, nor does the statute criminalize a substantial amount of constitutionally protected activity. See *Dario, supra.* R.C. 2903.211 is not aimed at the expression of ideas or beliefs but rather at oppressing behavior that invades another person's privacy interests. *Id.* Therefore, R.C. 2903.211 does not attempt to punish both illegal and legal activity.

As previously stated, if appellant had just been picketing against appellant, his actions would have been protected. However, his conduct crossed the line in that he repeatedly followed the complainant and eventually shouted threatening words at the complainant, all causing him to fear for his physical and mental well-being.

Viewing R.C. 2903.211 in its entirety, a person of ordinary intelligence would be able to discern what type of conduct is prohibited. The statute is narrow in scope, is sufficiently explicit to provide law enforcement officers with guidelines as to its proper use, and thereby does not encourage arbitrary enforcement. See *Dario, supra.*

Based upon the foregoing, appellant's argument that R.C. 2903.211 is unconstitutionally void for vagueness and is overbroad as it applies to this case is not well taken. Appellant's sixth and seventh assignments of error are found to be without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

GENE DONOFRIO, P.J., and VUKOVICH, J., concur.