OPINION
{¶ 1} This is an appeal of Appellant's conviction on one count of menacing by stalking, R.C. § 2903.211(A). Based on the record herein, her conviction is hereby affirmed.
 {¶ 2} On February 23, 2001, a complaint was filed against Appellant in Jefferson County Court. The complaint alleged that, from November 19, 1999, until February 1, 2001, Appellant had engaged in a pattern of menacing by stalking against Joseph Brinskey, in violation of R.C. § 2903.211(A), a first degree misdemeanor. The case went to a bench trial on April 12, 2001.
 {¶ 3} It was revealed at trial that Appellant met the victim in 1999. (Tr. p. 34). The victim was an employee at a record store, and Appellant was a customer at the store. (Tr. p. 30). He was 21 years old at the time. Appellant was 40. (Tr. p. 35).
 {¶ 4} On November 18, 1999, Appellant asked the victim to go to the Comfort Inn in Tonidale to have sexual intercourse with her, which they did. (Tr. pp. 32-34). Immediately afterward, the victim told Appellant that he no longer wanted to see her. (Tr. p. 34).
 {¶ 5} Shortly after this encounter, Appellant's teenage daughters began visiting the record store to ask the victim if he wanted to go riding with Appellant in her truck. (Tr. p. 36). After a number of refusals, Appellant visited the store and got into an argument with the victim about why he was no longer interested in her. (Tr. p. 37). Appellant began coming into the store every day and staying in the store during the victim's entire eight-hour shift. (Tr. pp. 37-38). This happened every day for over a year. (Tr. p. 39). The victim called security to have Appellant removed from the store, and he eventually asked his boss to ban her from entering the store. (Tr. p. 40).
 {¶ 6} Appellant often followed the victim home and watched him from a vacant house across the street. (Tr. p. 42). The victim was living in his mother's home at the time. (Tr. p. 81). Appellant physically assaulted the victim near his mother's home on September 21, 2000, leaving bruises on his neck and wrists. (Tr. pp. 47-49). Appellant was considerably larger and stronger than the victim. (Tr. p. 75).
 {¶ 7} The victim's mother, Janet Brinskey, testified that Appellant would call 40-50 times every day asking to talk to her son. (Tr. p. 83). Appellant would identify herself when she called. (Tr. p. 83). Eventually, Mrs. Brinskey had her phone number changed.
 {¶ 8} Appellant also sent numerous sexually explicit letters to the victim. (Tr. pp. 145-150).
 {¶ 9} The victim testified that Appellant's actions caused him anxiety; caused him to withdraw from dating or from visiting with anyone; kept him from leaving home except for vacations; and made him feel as if someone was always following him. (Tr. p. 52). His mother testified that her son became completely withdrawn, staying in his room at all times except to go to work or school. (Tr. p. 87).
 {¶ 10} The trial court convicted Appellant of one count of menacing by stalking and sentenced her to 180 days in jail, with 170 days suspended. The court also imposed a fine, court costs, 60 months of unsupervised probation and ordered Appellant to have no contact with the victim.
 {¶ 11} Appellant filed this timely appeal on April 25, 2001.
 {¶ 12} Appellant's first assignment of error states:
 {¶ 13} "THE COURT ERRONEOUSLY APPLIED THE CHARGE OF AGGRAFATED [sic] MENACING (ORC.SEC 2903.21(A)) TO THE TESTIMONY AND EVIDENCE PRESENTED IN FINDING DEFENDANT GUILTY."
 {¶ 14} Appellant argues that R.C. § 2903.21(A) requires proof that she caused the victim to believe that she would cause serious physical harm to him. Appellant refers to R.C. § 2903.21(A), the aggravated menacing statute, which states:
 {¶ 15} "(A) No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family."
 {¶ 16} The fallacy in Appellant's argument is that she was not charged with or convicted of aggravated menacing. Appellant was charged with and convicted of menacing by stalking. The menacing by stalking statute, R.C. § 2903.211(A), does not require proof that the victim was in fear of serious physical harm. R.C. § 2903.211(A) states:
 {¶ 17} "(A) No person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."
 {¶ 18} In fact, menacing by stalking may be demonstrated without any reference at all to the victim's fear of any type of physical harm, but rather, may be proven through evidence that a defendant caused mental distress in the victim. See State v. Smith (1998), 126 Ohio App.3d 193,709 N.E.2d 1245. It is not surprising that there was no discussion about "serious physical harm" at trial because "serious physical harm" was not an element of the prosecutor's case. Appellant is mistaken as to the elements of the crime for which she was convicted and her first assignment of error is not well taken.
 {¶ 19} Furthermore, there is evidence in the record demonstrating that Appellant did cause the victim to be in fear of physical harm. A verdict will not be overturned on appeal if there is some competent and credible evidence to support it. State v. Schiebel (1990),55 Ohio St.3d 71, 74-75. "Physical harm" is defined in R.C. 2901.01(A)(3) as, "any injury, illness, or other physiological impairment, regardless of its gravity or duration." Appellant had assaulted the victim once while he was near his home, and it was shown that Appellant was bigger and stronger than the victim. That assault, coupled with the persistence and intensity of Appellant's repeated contacts with the victim, could support a conclusion that Appellant caused the victim to be in fear of physical harm. The record fully establishes the elements of the crime of menacing by stalking. For all of the above, Appellant's first assignment of error is overruled.
 {¶ 20} Appellant's second assignment of error asserts:
 {¶ 21} "THE COURT, OVER OBJECTION OF DEFENSE COUNSEL, CONTINUALLY PERMITTED THE PROSECUTOR TO ASK LEADING QUESTIONS OF COMPETENT WITNESSES, SUGGESTING ANSWERS AND TESTIMONY, TO THE DETRIMENT OF THE DEFENDANT."
 {¶ 22} Appellant contends that there were five instances where the prosecutor used leading questions in direct or redirect examination of a witness. (Tr. pp. 13, 14, 17, 38, 252). Appellant does not explain why this should be construed as error or how it prejudiced her.
 {¶ 23} "`[T]he trial court has broad discretion in the admission and exclusion of evidence and unless it clearly abused its discretion and the defendant has been materially prejudiced thereby, [a reviewing] court should be slow to interfere.'" State v. Withers (1975), 44 Ohio St.2d 53, 55, 73 O.O.2d 280, 337 N.E.2d 780, quoting State v. Hymore (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 224 N.E.2d 126.
 {¶ 24} Crim.R. 611(C) states:
 {¶ 25} "Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions."
 {¶ 26} A leading question, "instructs [the] witness how to answer or puts into his mouth words to be echoed back." Black's Law Dictionary (6 Ed. 1990) 888. Although leading questions should not generally be used in direct examination of witnesses, the trial court, in its discretion, may allow them. State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 190,616 N.E.2d 909. Appellant makes no argument that the trial court abused its discretion in allowing leading questions. Appellant merely asserts that leading questions are not permitted on direct examination, which is an incorrect statement of the law. Appellant's second assignment of error is also overruled.
 {¶ 27} Based on the aforementioned analysis, both of Appellant's assignments of error are without merit and her conviction and sentence are affirmed.
Donofrio, J., concurs.
DeGenaro, J., concurs.