DECISION AND JUDGMENT ENTRY
{¶ 1} Respondent-Appellant Michael W. Masten appeals the judgment of the Hocking County Court of Common Pleas, which granted Petitioner-Appellee John T. Wallace's petition for an anti-stalking civil protection order against appellant. Appellant asserts that there was insufficient evidence to support the trial court's decision to grant the protection order. Appellant also argues that the segment of the protection order, instructing appellant to turn over all his firearms to the local police department violates his right to bear arms under theSecond Amendment to the United States Constitution.
 {¶ 2} For the reasons that follow, we disagree with appellant's first argument and affirm the judgment of the trial court. However, we find that appellant's second argument has some merit, and we modify the trial court's order accordingly.
 The Proceedings Below I. The Complaint and Ex Parte Order {¶ 3} On March 20, 2002, Petitioner-Appellee John T. Wallace, an attorney in Logan, Ohio, filed a petition with the Hocking County Court of Common Pleas seeking an anti-stalking civil protection order against Respondent-Appellant Michael W. Masten. Appellee asserted that since 1995, appellant had harassed him by following appellee near his place of business, calling him obscene names, and shouting out questions in public such as, "Are you still protecting child molesters?" Appellee further alleged that on several occasions appellant attempted to "run him down" with a motor vehicle.
 {¶ 4} Evidently, appellant was unhappy about the outcome of certain custody proceedings in which appellee had been appointed guardian ad litem for appellant's two daughters. Apparently, one of appellant's daughters had been sexually molested by her mother's new husband, and appellant had sought custody. The result of the proceedings was an agreed entry placing the two daughters with their mother in Texas. Apparently, appellant blames appellee for the outcome in that case. This is the reason for appellant's sustained grudge against appellee.
 {¶ 5} The trial court granted appellee an ex parte order, instructing appellant to not come within two blocks or 300 yards of appellee or any place where appellee may be found. This order was subsequently modified to order appellant to turn over all firearms in his possession to the Logan Police Department.
 II. The Hearing {¶ 6} On April 15, 2002, the trial court held a hearing in this matter. Several witnesses testified at the hearing.
 A. Appellee's Witnesses {¶ 7} Shelly Dixon, who was employed by appellee, testified that appellee would look out his office windows and scan the area surrounding his office before he would leave because he feared having another encounter with appellant.
 {¶ 8} David Kelch, the former Police Chief for the Logan Police Department also testified at the hearing. Kelch testified that he had been involved with both parties over the course of this feud. He further testified that he was generally concerned about appellant's continuous confrontations with appellee. The former chief of police feared that the verbal altercations and confrontations could escalate into violence.
 {¶ 9} Tina Smathers, who works for the Hocking County Municipal Court, also testified at the hearing. She testified about a confrontation that occurred on November 29, 2001. She testified that on that day she witnessed appellant follow appellee into a coffee shop near appellee's office. According to Smathers, appellant was yelling "something about supporting child molesters." She testified that appellant was very loud throughout the confrontation and that she was scared.
 {¶ 10} Appellee also testified at the hearing. He testified that appellant had been harassing and troubling him ever since the custody proceedings in 1995. Appellee described two occasions where appellant sat and gazed at appellee with a "hostile stare."
 {¶ 11} Appellee further testified that every couple of months he would "run into" appellant near the courthouse or post office, and that on those occasions appellant would yell something to the effect of, "Hey, Wallace, you still protecting child molesters?" Appellee also testified that appellant called him vulgar names. According to appellee, this kind of confrontation occurred approximately 40-45 times since 1995.
 {¶ 12} In addition, appellee testified that on three separate occasions, appellant drove his vehicle towards appellee in what appeared to be an attempt to run him down. Also, on two other occasions, appellant and appellee encountered each other in doorways. On both occasions, appellant evidently shoved the door in an attempt to strike appellee with the door. Appellant was successful on one of those occasions, apparently hitting appellee with a door.
 {¶ 13} Finally, appellee described the most recent incident between himself and appellant. This incident was the same one that was witnessed by Tina Smathers. Appellee testified that during this encounter, appellant made what appellee thought was an aggressive move but that no physical altercation, violence, or threat of violence occurred. Appellee concluded that these incidences have left him scared and concerned that appellant would commit some form of violence against him or his family.
 B. Appellant's Witnesses {¶ 14} Rory McBroom, the owner of the coffee shop wherein a portion of the most recent confrontation occurred, testified as a witness on appellant's behalf. Contrary to Smathers' recollection of the events, McBroom testified that the argument between appellant and appellee was no "big deal." Regarding the confrontation, he testified that appellee and appellant talked to each other but that there was no shouting or yelling. McBroom further testified that appellee followed appellant into the coffee shop on that occasion, but on cross examination, admitted that he wasn't sure who entered the shop first.
 {¶ 15} Appellant testified last at the hearing. Appellant testified that he worked as a pilot for Northwest Airlines and that he was a captain in the United States Army Reserves. Appellant testified that he had five or six "conversations" with appellee. However, appellant admitted that he "shout[ed] at Mr. Wallace on the street a lot of times."
 {¶ 16} Appellant also testified about the most recent confrontation between himself and appellee. Appellant testified that on that occasion he shouted at appellee from across the street and that appellee crossed the street to confront appellant. Appellant also testified that he recorded the conversation between himself and appellee. A transcript of that recording was admitted as an exhibit.
 {¶ 17} The trial court asked appellant several questions during his examination. The trial court asked appellant whether he cared if Northwest Airlines was informed of appellant's conduct towards appellee. Appellant informed the court that he did not care whether his employer was informed about his behavior. In response to this answer, the trial court expressed that it did not find appellant very credible.
 {¶ 18} In addition, appellant was questioned regarding a letter he wrote to his former spouse's attorney in Texas. Appellant wrote the letter in response to comments made by the attorney, insinuating that appellant was a coward and "treat[ed] ladies in an ungentlemanly like manner." In the letter, appellant challenged the attorney to a boxing match. The trial court laughed during the testimony. The trial court found the letter preposterous, funny, and sick.
 III. The Trial Court's Ruling {¶ 19} The trial court ruled in favor of appellee and issued a five-year anti-stalking civil protection order. Appellant was ordered to stay two blocks or 300 yards away from appellee and to have no contact with appellee. Also, appellant was prohibited from obtaining, using, or possessing a firearm. He was further ordered to turn over any firearms he might have to the local police department for storage, until the court order expired.
 {¶ 20} The trial court also made separate findings of fact.
 The Appeal {¶ 21} Appellant timely filed his notice of appeal and presents the following assignments of error for our review.
 {¶ 22} First Assignment of Error: "The Trial Court, Pursuant To Ohio Rev. Code § 2903.214, Improperly Issued A Civil Protection Order. The Evidence Before The Trial Court Does Not Meet The Applicable Legal Standards For The Issuance Of Such An Order."
 {¶ 23} Second Assignment of Error: "The Civil Protection Order's Provisions Dealing With Firearms Improperly Infringe On Appellant's Constitutional Right To Bear Arms Since There Is No Evidence Concerning The Use Or Threatened Use Of Firearms In The Record."
 I. Issuance of a Protection Order {¶ 24} In his First Assignment of Error, appellant asserts that the trial court lacked sufficient evidence to support the issuance of the protection order against him. Appellant relies heavily on the fact that he never made a verbal threat of violence, or committed violence, against appellee.
 A. Standard of Review {¶ 25} Initially, we note that the decision to grant or deny a civil protection order lies within the sound discretion of the trial court. See Williams v. McDougal (May 16, 2001), Gallia App. No. 00CA14, citing Woolum v. Woolum (1999), 131 Ohio App.3d 818, 821, 723 N.E.2d 1135. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219, 450 N.E.2d 1140.
 {¶ 26} To constitute an abuse of discretion, "the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will, but the perversity of will, not the exercise of judgment, but the defiance of judgment, not the exercise of reason but, instead, passion or bias." Nakoff v. Fairview Gen. Hosp.,75 Ohio St.3d 254, 256, 1996-Ohio-159, 662 N.E.2d 1.
 {¶ 27} Moreover, it is well-established that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." See Tuuri v. Snyder, 11th Dist. No. 2000-G-2325, 2002-Ohio-2107, quoting C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus; see, also, Williams v. McDougal, supra. "As the trier of fact is in the best position to view the witnesses and their demeanor, in making a determination that a judgment is against the manifest weight of the evidence, this court is mindful that we must indulge every reasonable presumption in favor of the lower court's judgment and findings of fact."Tuuri v. Snyder, supra, citing Shemo v. Mayfield Hts. (2000),88 Ohio St.3d 7, 10, 722 N.E.2d 1018; Gerijo, Inc. v. Fairfield (1994),70 Ohio St.3d 223, 226, 638 N.E.2d 533.
 {¶ 28} To put it plainly, we "may not simply substitute [our] judgment for that of the trial court so long as there is some competent, credible evidence to support the lower court findings." State ex rel.Celebrezze v. Environmental Enterprises, Inc. (1990), 53 Ohio St.3d 147,154, 559 N.E.2d 1335. Accordingly, in the event that the evidence is reasonably susceptible to more than one interpretation, we must construe it consistently with the lower court's judgment. See Gerijo at 226;Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19, 526 N.E.2d 1350.
 B. Statutes Governing Protection Orders {¶ 29} R.C. 2903.214 governs the filing of a "petition for a protection order." R.C. 2903.214(C) provides that a person may seek relief under this statute, but that the petition must include: (1) an allegation that the respondent engaged in a violation of section R.C. 2903.211
against the person to be protected by the protection order, including a description of the nature and extent of the violation; and, (2) a request for relief under this section. See R.C. 2903.214(C).
 {¶ 30} R.C. 2903.211 prohibits menacing by stalking. It provides as follows, "No person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." R.C. 2903.211(A). The statute defines "pattern of conduct" as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C. 2903.211(D)(1).
 C. Appellant's Conduct Sub Judice {¶ 31} In the case sub judice, appellant asserts that his actions could not have knowingly caused appellee to believe that appellant would cause appellee physical harm. As we have already noted, appellant relies heavily on the lack of any verbal threats of physical harm or attempted physical harm by him towards appellee.[1]
 {¶ 32} The Seventh District Court of Appeals held that explicit threats are not necessary to prove the essential elements of menacing by stalking under R.C. 2903.211(A). See State v. Smith (1998),126 Ohio App.3d 193, 202, 709 N.E.2d 1245, appeal not allowed (1998),82 Ohio St.3d 1430, 694 N.E.2d 980. Thus, the fact that appellant did not verbally threaten to do appellee physical harm is immaterial in the case sub judice. Also, we note that according to appellee's testimony, which the trial court obviously found credible, appellant allegedly attempted to cause, or at least threatened to cause, appellee physical harm in the three motor vehicle incidents.
 {¶ 33} Appellant also asserts that appellee was not in fear of physical harm at the hands of appellant. Appellant argues that the most recent incident between he and appellee was sustained by appellee crossing the street and following appellant to the coffee shop. Appellant asserts that if appellee truly believed that appellant would cause him physical harm, appellee would not have crossed the street and confronted him after appellant had shouted his usual refrain at him. However, it is not unheard of that a person might become so frustrated or angered that he or she might disregard his or her own fear and safety in order to confront the source of that agitation.
 {¶ 34} Nevertheless, based on the facts of this case, the trier of fact could reasonably have inferred that appellee was afraid appellant would cause physical harm to him. While the evidence was arguably thin on that issue, we hold that it was sufficient to meet the preponderance-of-the-evidence standard, particularly given the remedial goal of the statute. See Felton v. Felton (1997), 79 Ohio St.3d 34,40-41, 679 N.E.2d 672; State v. Benner (1994), 96 Ohio App.3d 327,330-331, 644 N.E.2d 1130; State v. Kent (Apr. 21, 2000), 1st Dist. Nos. C-990267 and C-990268.
 {¶ 35} Appellant also argues that the trial court's decision amounts to a violation of his First Amendment right to free speech. However, aside from this superficial assertion appellant does not provide any further analysis on this issue. Accordingly, we will not address this argument. See App.R. 16; App.R. 12(A)(2); Hawley v. Ritley (1988),35 Ohio St.3d 157, 159, 519 N.E.2d 390; Taylor v. Franklin Blvd. NursingHome (1996), 112 Ohio App.3d 27, 677 N.E.2d 1212 (stating that a reviewing court may ignore an "unbriefed error" and "impose sanctions for violations of App.R. 12(A)"). Furthermore, our prior analysis has already determined that the trial court's issuance of the protection order was supported by competent, credible evidence.
 {¶ 36} Accordingly, we find that the trial court did not abuse its discretion in granting appellee the protection order against appellant. Thus, we overrule appellant's First Assignment of Error.
 II. Right to Bear Arms {¶ 37} In his Second Assignment of Error, appellant asserts that the protection order violates his constitutional right to bear arms because the evidence presented to the trial court does not support that portion of the order requiring appellant to turn over his firearms to the police.
 {¶ 38} At the outset, we decline to address the constitutionality of a protection order that instructs the subject of that order to divest himself of all firearms. Likewise, we refuse to explore the depth or breadth of an individual's rights to bear arms under the Ohio and United States Constitution.[2]
 {¶ 39} Accordingly, we limit our review of the present order to the issue of whether it is supported by evidence.
 {¶ 40} R.C. 2903.214(E)(1) provides that, "After an ex parte or full hearing, the court may issue any protection order * * * that contains terms designed to ensure the safety and protection of the person to be protected by the protection order, including, but not limited to, a requirement that the respondent refrain from entering the residence, school, business, or place of employment of the petitioner or family or household member." R.C. 2903.214(E)(1).
 {¶ 41} We find the portion of the present order, forbidding appellant from possessing firearms, is not supported by the evidence. Throughout the course of this ongoing dispute, there has been no indication that appellant has had in his possession, or used, a firearm during any of the encounters with appellee.
 {¶ 42} The conflict between the parties appears to surface only when they come into contact with each other. Therefore, the protection order's provision that appellant stay two blocks or 300 yards away from appellee was sufficiently designed to ensure appellee's safety and protection. Appellant's gun collection, which he maintains in his home, has had no impact in this ongoing dispute. Thus, this particular provision of the protection order is not reasonably tailored to, or designed for, this particular set of circumstances.
 {¶ 43} Appellant's Second Assignment of Error is sustained.
 Conclusion {¶ 44} Accordingly, we find that the trial court did not abuse its discretion in issuing the protection order against appellant because that order is supported by competent, credible evidence. However, we find that the evidence does not support the protection order's provision instructing appellant to turn over his firearms to local authorities.
 {¶ 45} Therefore, we affirm the trial court's decision to issue a protection order against appellant, but modify that judgment pursuant to App.R. 12(B), thereby vacating the provision instructing appellant to relinquish his firearms to local authorities.
Judgment affirmed and modified.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED AND MODIFIED and costs herein taxed equally between the parties.
The Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the HOCKING COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J., and Abele, J.: Concur in Judgment and Opinion as to Assignment of Error I; Concur in Judgment Only as to Assignment of Error II.
[1] Appellant does not argue that a pattern of conduct, as defined in R.C. 2903.211(D)(1), has not been established. The evidence in the record reveals that on multiple occasions since 1995 appellant followed, yelled, shouted, cursed, and stared in a hostile manner, at appellee. Appellant conceded as much at the hearing.
[2] We note, however, that in Arnold v. Cleveland (1993),67 Ohio St.3d 35, 616 N.E.2d 163, the Supreme Court of Ohio recognized that the right to bear arms is a "fundamental individual right." SeeArnold at 43 (emphasis sic); Section 4, Article I, Ohio Constitution.