[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY. {¶ 1} This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3.
 {¶ 2} Following a bench trial, David B. Tyler was found guilty of two counts of menacing by stalking, in violation of R.C. 2903.211(A). Tyler was sentenced to eighteen months in prison.[1] Tyler now appeals. In two assignments of error, he argues that his conviction was against the weight and sufficiency of the evidence.
 {¶ 3} We address the assignments of error together. When reviewing the sufficiency of the evidence to support a conviction, we must examine the evidence admitted at trial in the light most favorable to the prosecution and determine whether such evidence could have convinced any rational trier of fact that the essential elements of the crime were proved beyond a reasonable doubt.[2] In a challenge to the weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and decide whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[3]
 {¶ 4} R.C. 2903.211(A) provides, "No person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." The charges against Tyler included felony enhancements under the statute because the victim of the offense was a minor,[4] and because Tyler had a history of violence or a history of other violent acts toward another person.[5] At trial, Tyler stipulated to the latter felony-enhancement.
 {¶ 5} On appeal, Tyler argues that the state presented insufficient evidence that the victim had suffered mental distress as a result of Tyler's conduct. Tyler also contends that the state failed to prove that he had acted knowingly, as required by R.C. 2903.211(A). We disagree and affirm the trial court's judgment.
 {¶ 6} R.C. 2903.211(D)(2) defines "mental distress" as "any mental illness or condition that involves some temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment." A trier of fact may make a determination on mental distress without the aid of expert testimony.[6]
 {¶ 7} A simple statement by a victim that he was distressed is not sufficient to meet the definition.[7] A court must take into account all the defendant's actions, even if a particular action, on its own, may not seem particularly threatening or criminal.[8] The court may consider the cumulative effect of the encounters between the defendant and the victim in its determination of mental distress.[9] Explicit threats are not necessary to establish menacing by stalking.[10]
 {¶ 8} In State v. Kent,[11] this court held that, in a prosecution for menacing by stalking, the evidence was sufficient to support the findings that Kent had knowingly caused a fifteen-year-old girl to believe that he would cause her physical harm, and that he had actually caused her mental distress, when it showed that he had approached the girl at a shopping mall, flattered her, followed her, surreptitiously obtained her telephone number, made a series of unwanted telephone calls, and sent her an anonymous gift. This court found compelling the details of the mental distress caused by the defendant and the changes in the pattern of the victim's life brought about by her distressed mental state.
 {¶ 9} In this case, during January and February 2002, Tyler, a forty-four-year-old man, began to pursue a sixteen-year-old boy who worked at a local restaurant. Tyler made a series of calls to the boy's home, trying to get the boy to meet him in a private place. At one point, Tyler went to the employee area of the restaurant to introduce himself to the boy and to again ask him to meet in a private place. Tyler later left an angry note for the boy at the restaurant when the boy lied to him about his work schedule. As a result of Tyler's conduct, the boy altered his routine because he was so afraid of Tyler.
 {¶ 10} One of the boy's co-workers testified that, on an evening in January 2002, Tyler approached him and asked him to give a note to the boy. The typewritten note stated, "Please call me later when you get home. [Phone number deleted]. Just leave your name number on my machine, and I'll call you tomorrow or the next day. I need to holler at you. It's important. Trust me. Dave." The boy later returned the call, mistakenly believing that "Dave" was a high-school senior whom he knew.
 {¶ 11} The boy called the telephone number and spoke to Tyler. Tyler told him that he wanted the boy for "some kind of art thing," and that he would like to meet the boy somewhere that was not public because he did not like public places. The boy did not agree to meet Tyler and lied to him by saying that he was busy. The boy testified that he actually was not busy but that he did not know what Tyler's intentions really were at that point. The boy testified that he was concerned for his safety, but that he did not tell his parents because he did not want them to worry.
 {¶ 12} Although the boy did not give Tyler his phone number, Tyler called the boy several times at his home. The boy testified that the subsequent conversations were similar to the first telephone conversation. Tyler told the boy that he wanted to say something, but that he could not say it. In each of the calls, Tyler requested to see the boy in a private place.
 {¶ 13} One night, while the boy was working at the restaurant, a co-worker told him that someone had come to the employee entrance at the back of the restaurant and asked for the boy. The employee entrance was not open to the public. When the boy went to the rear of the restaurant, Tyler was standing in a small employee area in the restaurant's kitchen. Tyler introduced himself as the person to whom the boy had spoken on the telephone and who had passed the note. Tyler told the boy to keep in touch and to tell him when he was available because he still wanted to get together with the boy in a private place.
 {¶ 14} The boy testified that he became worried and confused, and that he did not know what was going on. The boy became scared because he did not know what Tyler wanted and because Tyler's "story kept changing." The boy testified that he "got kind of freaked out, because [he] wasn't sure what was going on."
 {¶ 15} During one of the conversations with Tyler, the boy lied to him about his work schedule because he was afraid that Tyler would return to the restaurant to see him. One day, the boy found an envelope with his name on it on the employee bulletin board. Inside was a long, typewritten note from Tyler angrily telling him that it "was not cool" that the boy had lied about his work hours, and instructing him to call Tyler.
 {¶ 16} One night, the boy was working at the restaurant after closing. The boy testified that he was taking garbage cans out the rear door to a dumpster when he saw a person he believed to be Tyler drive past him in the parking lot. He testified that Tyler was looking at the boy as he drove by. The boy dropped the garbage cans and ran back into the restaurant to get one of the cooks to come out and look for the car. At that point, the car was just turning out of the parking lot.
 {¶ 17} The boy testified that he was very scared, "to the point where I was going to call the police." He testified that he had been scared by Tyler's conduct in the beginning, and that "the more things that happened, I got even more scared." So the boy told his parents about Tyler, and they called the police. The boy testified that he told his parents because he thought Tyler was "going to end up molesting me or something."
 {¶ 18} The boy had told co-workers that he was being stalked. After the boy lied to Tyler about his work hours, he became frightened to walk to his car alone, so he asked a cook to walk with him when he left the restaurant. The boy said that his fears had become much greater during this period. He began to park his car by the employee entrance and would ask co-workers to stand by the door to watch him go to his car.
 {¶ 19} One co-worker testified that after the boy had received the first note from Tyler, the boy's behavior changed. He said that the boy had asked the manager if he could park closer to the building. The co-worker also said that the boy was afraid to take the garbage out at night and would ask others to do it.
 {¶ 20} Another co-worker, who was present the night that Tyler had come to the back door of the restaurant, testified that, following that episode, the boy appeared to be shocked and "out of it." He testified that the boy had been worrying about Tyler for a while, and that he thought that the boy may have been overreacting to Tyler's conduct.
 {¶ 21} A manager testified that she asked the boy if he was lying to his father about his work schedule because of calls that had been made to the restaurant. The boy's father testified that they had constantly received telephone calls for the boy from an adult male. He testified that, before they called the police, the boy had become very scared, but that he did not notice that the boy's routine had changed.
 {¶ 22} In this case, we hold that the state presented sufficient evidence of the victim's mental distress. It showed that the boy was so frightened by an older man's unwanted attention, and so worried that the man wanted to molest him, that the boy changed his routine in order to evade the man. The boy's testimony about his mental distress was corroborated by his own change of routine and by his co-workers' statements that they had noticed changes in his demeanor as well as his routine.[12]
 {¶ 23} Next, Tyler argues that the state failed to present sufficient evidence that he had acted knowingly in causing mental distress to the victim. A person acts "knowingly," regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature.[13] The issue is whether Tyler was aware that his conduct would probably cause the victim mental distress or to believe that Tyler would cause the victim physical harm.[14]
 {¶ 24} We hold that the state presented sufficient evidence that Tyler had acted knowingly in causing mental distress to the victim.[15]
The victim had not given Tyler his telephone number, yet Tyler called him repeatedly. The victim had not agreed to meet Tyler, despite Tyler's repeated requests to meet him in a private place. When the victim lied to Tyler about his work schedule in order to evade Tyler, Tyler responded by leaving a note for the victim at the restaurant, chastising him for lying and requesting that he call Tyler.
 {¶ 25} Under the circumstances, we hold that the evidence presented at trial could have convinced a rational trier of fact that the essential elements of the crime of menacing by stalking were proved beyond a reasonable doubt.[16] Moreover, we cannot say that the trier of fact clearly lost its way or created a manifest miscarriage of justice.[17] We overrule the assignments of error and affirm the judgment of the trial court.
 {¶ 26} Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Sundermann, P.J., Gorman and Winkler, JJ.
[1] The trial court merged the counts for sentencing purposes.
[2] See State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541.
[3] Thompkins, supra, at 387, 678 N.E.2d 541.
[4] R.C. 2903.211(B)(2)(d).
[5] R.C. 2903.211(B)(2)(e).
[6] See State v. Bilder (1994), 99 Ohio App.3d 653, 665, 651 N.E.2d 502;State v. Tichon (1995), 102 Ohio App.3d 758, 658 N.E.2d 16; State v.Kent (Apr. 21, 2000), 1st Dist. Nos. C-990267 and C-990268.
[7] See Lindsay v. Jackson (Sept. 8, 2000), 1st Dist. No. C-990786.
[8] See Miller v. Francisco, 11th Dist. No. 2002-L-097, 2003-Ohio-1978.
[9] See State v. Smith, 3rd Dist. No. 13-02-11, 2002-Ohio-5095;Tuuri v. Snyder, 11th Dist. No. 2000-G-2325, 2002-Ohio-2107.
[10] See State v. Smith (1995), 126 Ohio App.3d 193,709 N.E.2d 1245.
[11] (Apr. 21, 2000), 1st Dist. Nos. C-990267 and C-990268.
[12] See Noah v. Brillhart, 9th Dist. No. 02CA0050, 2003-Ohio-2421 (the victim's mental distress was corroborated by the fact of the victim's changed routine and pattern of activity, her fear of visiting friends after dark, and her request that a sheriff's deputy escort her to daytime meetings; Akron v. Andrews (Jan. 26, 2000), 9th Dist. No. 19383 (victim lived in constant fear and had changed his normal routines as a result of the defendant's actions, including the installation of security lights around his home, canceling a vacation so that his daughter would not be home alone, attempting to alter his work schedule, and asking neighbors to keep an eye on his home).
[13] R.C. 2901.22(B).
[14] See State v. Smith, 3rd Dist. No. 13-02-11, 2002-Ohio-5095;Andrews, supra.
[15] See State v. Kent, supra.
[16] Thompkins, supra, at 386, 1997-Ohio-52, 678 N.E.2d 541.
[17] Id. at 387, 1997-Ohio-52, 678 N.E.2d 541.